

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Birmingham District Office**

Ridge Park Place
1130 22nd Street, South, Suite 2000
Birmingham, AL 35205
(205) 212-2148
TTY (205) 212-2112
FAX (205) 212-2105

Bobbie S. Crook, PC
Attorney at Law
367 S. St. Andrews Street
Dothan, AL 36301

RE:   Tracey Lampkin vs. UPS
      Charge No. 130-2006-00783

Dear Mr. Crook:

This correspondence is in reference to the charge of discrimination which Charging Party filed against UPS. Based on my analysis of the information which you have submitted, and information obtained from other sources, I have concluded that additional investigation is not likely to result in a violation of the statute, as Charging Party has alleged. Our investigation disclosed the following:

Allegation:   Charging Party alleges that she was discriminated against due to her sex, female and race, Black. Charging Party further alleges she was denied OMS positions in 2003 and May 2005.

Response:   Respondent denies that Charging Party was discriminated against due to her sex, female and race, Black. Respondent contends and evidence supports that during the relevant time frame, OMS positions were not supervisory or management positions at Respondent. Therefore, a move by Charging Party from the position of Part-Time Local Sort Supervisor to an OMS position would not have represented a promotional opportunity for her. To the contrary, a move by Charging Party from the Part-Time Local Sort Supervisor role to an OMS position during the relevant time frame could be viewed as a professional step backward. Furthermore, Respondent has no record of Charging Party applying for either of these OMS positions, and Respondent has filled the positions with the temporary hourly employees who were already performing the duties of the positions.

Allegation:   Charging Party alleges that she was denied Part-Time Pre-Load Supervisor positions in 2003 and 2004.

Response:   Moving from a Part-Time Local Sort Supervisor position to a Part-Time Pre-Load Supervisor position would not be a promotion but rather a lateral move from one department to another. Furthermore, Respondent has no record of Charging Party applying for either of these Part-Time Pre-Load Supervisor positions, and Respondent has filled the positions with the temporary hourly employees who were already performing the duties of the positions.

Allegation:   Charging Party purports that she was denied another OMS position which she asserts became available in July 2005.

Response:   Respondent contends that there was no OMS position filled in or around July 2005. The only other OMS position that became available in 2005, was filled in November. It was around this time that Respondent was in the process of reclassifying the duties of the OMS position from a non-supervisory position to a quasi-management position. Even if the reclassification had taken place by the time the position was filled in November 2005, changing from a Part-Time Local Sort Supervisor position to an OMS position would still not have represented a promotion for Charging Party. Furthermore, Respondent has no record of Charging Party applying for the OMS position, and Respondent has filled the position with the temporary hourly employee who was already performing the duties of the position.

Allegation:   Charging Party further purports that she was discriminated against with respect to her pay. Specifically, Charging Party purports that she is paid less than Ryan Brown, White male, who was promoted to a Part-Time Local Sort Supervisor after Charging Party.



RECEIVED MAR 17 2006

| | |
|---|---|
| Response: | Evidence shows that Charging Party received a higher raise than Mr. Brown in 2004. In 2005, Mr. Brown did receive a higher raise than Charging Party. Charging Party has continued to be paid significantly more than Mr. Brown even after the pay raises. |
| Allegation: | Charging Party alleges she has been discriminated against with respect to discipline. Charging Party specifically alleges that she was made to do write-ups in situations where she was on vacation, and she felt that this was unfair. |
| Response: | It is common practice for supervisors employed by Respondent to write themselves up for incidents that occur under their responsibility. Most of the time there is no disciplinary action taken for such write-ups. Rather, requiring write-ups is an effort by Respondent to make sure that the responsible employees understand what happened and to interactively form a plan to prevent mistakes in the future. There is no evidence that Charging Party has been treated differently than White supervisors with respect to write-ups. |
| | Such write-ups are not uncommon since a supervisor is responsible for his or her department and for the employees he or she supervises regardless of whether the supervisor was actually present when the incident occurred. Charging Party has not suffered any disciplinary or adverse employment action as a result of any write-up. |
| Allegation: | Charging Party purports that around May 2005, Mr. Icenogle tried to suspend her following a problem with one of the machines on the local sort. Charging Party also purports that two White supervisors were also working on the machine, but they were not threatened with suspension. Charging Party further purports that Mr. Icenogle was trying to get her fired. |
| Response: | The problem with the machine occurred because Charging Party failed to check that the machine was operating properly. This was Charging Party's responsibility, not that of any other supervisor. Furthermore, this same problem had occurred under Charging Party's supervision on occasions prior to this particular incident. |
| | As Charging Party admits in her charge, she was not suspended or in any other manner disciplined for this incident. Mr. Icenogle denies ever trying to get Charging Party terminated. In fact, he expressly states that he did not believe that Charging Party should be terminated for this particular incident with the machine or any other incident for that matter. |

The evidence in the Commission's possession at this time fails to support that Charging Party was discriminated against as alleged. Further, all of the employees of whom Charging Party alleges did not have to take the management placement test in fact have taken the Management Assessment and Promotion Process (MAPP) and were found to be well qualified for the positions.

Based on this analysis, the Commission cannot conclude that the law has been violated as Charging Party has alleged. However, if you have any additional information and/or documentation which you would like considered, please submit it to me by March 23, 2006.

If the District Director decides to dismiss your case on the basis of the evidence currently in our possession, the Dismissal and Notice of Rights issued by the Director, will advise that you may pursue this matter in Federal District Court by filing a private suit.

If you have any questions or if there is a need for discussion, feel free to call me at (205) 212-2056.

Sincerely,

Jean McGinnis-Barrera
Investigator

3-16-06
Date

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form

ENTER CHARGE NUMBER
[X] EEOC
130-2006-00783

_____ and EEOC
(State or local Agency, if any)

| NAME (Indicate Mr., Ms., or Mrs.) Tracey Lampkin | HOME TELEPHONE NO. (Include Area Code) 334-691-7272 |
|---|---|

| STREET ADDRESS 165 Trapper Ridge | CITY, STATE AND ZIP Cottonwood, AL 36320 | COUNTY Houston |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME United Parcel Service | NO. OF EMPLOYEES/MEMBERS Over 15 | TELEPHONE NO. (Include Area Code) 334-794-3886 |
|---|---|---|

| STREET ADDRESS 4116 N. Montgomery Highway | CITY, STATE AND ZIP Dothan, AL 36303 | COUNTY Houston |
|---|---|---|

| NAME | | TELEPHONE NO. (Include Area Code) |
|---|---|---|
| STREET ADDRESS | CITY, STATE AND ZIP | COUNTY |

RECEIVED EEOC NOV 0 7 2005 BIRMINGHAM DISTRICT OFFICE

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es):
[x] Race [x] Color [x] Sex [ ] Religion [ ] Age [ ] Disability
[ ] National Origin [x] Retaliation [ ] Other

DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (Month, day, year)
Continuous and Ongoing

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s):

Social Security Number: 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   Date of Birth: 5-24-70   Sex: Female   Race: African American

   I, Tracey Lampkin, began working for United Parcel Service (UPS), in 1997 as a part time employee. In 2001, I was promoted to Local Sort, Part-Time Supervisor after passing the required management placement test. I worked for two different Center Managers and in 2002, Robert Icenogle became the third Center Manager at UPS. After Icenogle was hired, I began to suffer racial and sexual discrimination. I will not try to list everything, but will attempt to summarize the discrimination I have been and continued to be subjected to at UPS.

[X] I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary to meet State and Local Requirements)

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

11-03-05   *Tracey Debose Lampkin*
Date        Charging Party (Signature)

SIGNATURE OF COMPLAINANT
*Tracey Debose Lampkin* 11-3-05

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *Angela D. Dykes*
(Day, month, and year)
My Commission Expires 11-8-06

Page 2 EEOC Charge
Case 1:06-cv-00538-WKW-CSC    Document 1-2    Filed 06/15/2006    Page 4 of 8
Name: [illegible]
Social Security #: [illegible]
Date: 11-3-05
EI [illegible]  Bo-2006-00283
NOV 0 7 2005
BIRMINGHAM DISTRICT OFFICE

Since 2003, I have requested several different positions within the company; however, I have been overlooked and/or denied the positions because of my race. I have applied for two Pre-Load Supervisor's positions, and three Operational Management Services (OMS) positions. All of these positions have been filled by white employees, most of whom were not required to take the management placement test. Additionally, I have more seniority than any of the white employees who were given the positions over me.

During the summer of 2003, Icenogle promised me an OMS position, but did not follow through. Instead, when the position was to be filled, he told me that there was a hold on hiring supervisors. I called the District Manager's office, and asked about the hold on hiring. I was informed that there was no hold. Icenogle placed a white female in the position. I was as qualified or more qualified than the white female.

A Pre-Load Supervisor position also became available sometime in 2003. I applied, but Icenogle would not consider me for the position. The position was filled by a white male, who was not required to take the management placement test. Icenogle informed me that I was going to stay on Local Sort.

Another Pre-Load Supervisor's position became available around February 2004, and I applied for the position. Again, Icenogle would not consider me for the position and told me that I was going to stay on Local Sort because that was what I knew. I tried to explain that I wanted to learn more about the company so that I could advance; however, because of my race, he refused to consider me for the position. A white male was given the position, and again, this white employee was not required to take the management placement test.

A second OMS position became available in May 2005. Icenogle approached me and told me that he knew I wanted the position. When I confirmed that I did, he informed me that it was his Center and he would put me where he wanted me to be. Further, despite previously telling all of the supervisors that we were equals, he tried to discourage me from wanting this position by telling me that it would be a demotion and cut in pay. It is my understanding that this is not true. A white female was given the position although she was only a temporary employee and had only been with the company for a little over a year. She was not required to take the management placement test and has stated that she would have probably failed the test if she had been required to take it. I was more qualified for the position than the white female. Additionally, this same employee was hired through a temporary agency directly into an OMS position without taking the Management test. I had inquired about this OMS position before the white female was hired, but was not given the position.

A third OMS position became available in July 2005, and I applied for it. Another African American female also applied for the position. The position has been given to a white female that worked under my supervision. I am more qualified than the white female who is going to have to be trained to do the job. I would not have required training for the position. The white female was given the position even though the new Center Manager was well aware that I had asked for the position. He approached me when the position first became available and told me that he knew about the problems I had been having and that he knew I was interested in the position. Further, before the position was filled, the other black female had been acting as the OMS and will still be required to cover the position should the white female call in sick or otherwise not report to work. Again, as a deterrent, I was told the position would be a demotion. This could not be true if the supervisor positions are equal as Icenogle had told us before.

I did complain to a black full time supervisor several times. I told him that I felt Icenogle was prejudiced towards the black employees. This supervisor agreed that I was not getting the positions because of the color of my skin. It is also my understanding that Icenogle treated the black drivers differently than the white drivers. He continuously nagged them about issues that he did not address with the white drivers. It is my understanding that the black drivers filed discrimination charges against Icenogle, but UPS did not take action to address their complaints.

Name: Tracy Deboe Camplin
Social Security #: 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
Date: 11-3-05

130-2006-00783

I have also suffered discrimination in pay due to both my race and sex. Ryan Brown, a white male, was hired in February 2003, and was quickly promoted to a supervisory position equal to mine. In the past two years, Brown has been given higher raises than me. In 2004, my raise for the year was less than Brown's despite my having a better job performance than Brown. This year, Brown and I are working in the same department and again, his raise was considerably higher than mine.

I have also suffered and continue to suffer discrimination in regards to discipline. I have been and continue to be forced to write myself up for the same or substantially the same errors the white supervisors make; however, the white supervisors are not required to write themselves up. I have, on several occasions, been required to do a write up on myself even when I was out of work on vacation or off for the day and was not responsible for the errors. On one occasion, I had to write myself up when I knew there was going to be a problem and called Icenogle ahead of time to let him know there was going to be a problem. Instead of helping me deal with the problem, he let the error occur and then instructed me to do a write up. Around May 2005, Icenogle tried to suspend me following a problem with the SCS machine, but could not justify the suspension. The two white supervisors working on the SCS machine with me were not threatened with suspension, instead the entire incident was blamed on me. I believe that Icenogle was trying to get me fired and that if I had been suspended, I would have been fired.

Sometime in June, Icenogle was moved to another department. While he was my supervisor, I was scared to report Icenogle's discrimination because he had informed us that he could and would get rid of anyone that he wanted out. Since Icenogle's transfer, I have complained to Human Resources and told them that I felt I had been discriminated against. Nothing has been done to remedy the discrimination I have suffered and continue to suffer.

Upon information and belief, it is my understanding that other black employees at United Parcel Services have been racially discriminated against and have complained about the racial discrimination and harassment.

I believe that I have suffered and continue to suffer from racial discrimination, sexual discrimination and retaliation while employed with United Parcel Services, and that I was and continue to be discriminated against because of my race, black and sex, female. I have been discriminated against because of my race and sex in job assignments, training, promotions, wages, discipline, discharge, and other terms, conditions, and privileges of employment; and retaliated against in that the conduct was wilful, malicious, and in wanton disregard of my federally protected rights. Moreover, I believe that UPS has engaged in a pattern and practice of race discrimination against myself and other African Americans. I believe, further, that UPS applied facially neutral job provisions in a way that has a disparate impact on African Americans. I believe that African Americans are discriminated against as a class in job assignments, training, promotions, wages, discipline, discharge, and other terms, conditions, and privileges of employment.

_Tracy Deboe Camplin_
Charging Party

11-3-05
Date

RECEIVED
EEOC

NOV 0 7 2005

BIRMINGHAM DISTRICT

EEOC Form 161 (10/96) **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: Tracey Lampkin<br>165 Trapper Ridge<br>Cottonwood, AL 36320 | From: Birmingham District Office<br>Ridge Park Place, Suite 2000<br>1130 22nd Street South<br>Birmingham, AL 35205 |
|---|---|

[ ]  *On behalf of person(s) aggrieved whose identity is*
     CONFIDENTIAL *(29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 130-2006-00783 | Jean McGinnis-Barrera | (205) 212-2056 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[ ]  We cannot investigate your charge because it was not filed within the time limit required by law.

[ ]  Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge.

[ ]  While reasonable efforts were made to locate you, we were not able to do so.

[ ]  You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other *(briefly state)* _____

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not **be collectible.**

On behalf of the Commission

_____          4/10/06
Bernice Williams-Kimbrough, District Director         *(Date Mailed)*

Enclosure(s)

cc:  Mark T. DeLoach
     Alston & Bird, LLP
     One Atlantic Ctr.
     1201 West Peachtree Street
     Atlanta, GA 30309-3424

# INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>. If you also plan to sue claiming violations of State law, please be aware that time limits and other provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS** -- **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS** -- **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: backpay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/96 to 12/1/96, you should file suit <u>before</u> 7/1/98 -- *not* 12/1/98 -- in order to recover unpaid wages due for July 1996. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA backpay recovery period.

**ATTORNEY REPRESENTATION** -- **Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE** -- **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

## Information For Persons With Age Discrimination Claims Against State Employers: How Kimel V. Florida Board of Regents Affects Your Rights

The Supreme Court has recently held in Kimel v. Florida Board of Regents that the Federal Age Discrimination in Employment Act (ADEA) does not override the State's constitutional immunity from suits by private persons for monetary relief. Therefore, you may not bring a age discrimination suit seeking monetary relief against a State employer in either Federal or State court, unless the State has give its consent. We know of no State that consents to Federal ADEA suits. However, the Kimel Court noted that persons may recover money damages from their State employers under State discrimination laws in 44 States.

The age discrimination provisions of the ADEA still apply to State employees. In spite of Kimel, ADEA chargers may still be filed with the EEOC and EEOC retains its full authority to seek relief from ADEA violations and to otherwise enforce the ACT, including suing States in Federal Court.

The additional information below may or may not apply to your case. (Your attorney, EEOC, or a State or local Fair Employment Practices Agency that enforces age discrimination law can explain or discuss these matters with you).

- States may permit suits by private person but can define how they may be sued, such as procedures, who can sue, and in what courts. In this regard, as noted above, many States have laws allowing private age discrimination suits in State court under State law. (Therefore, your charge of discrimination, or other factors, may entitle you to sue or otherwise seek relief under State law.

- Kimel does not apply to local units of government-Counties, Cities, School Boards, Special Taxing Districts, ect - if damages awarded will not come from a State's treasury. Kimel does not apply to interstate compact agencies that are not structured to qualify for immunity.

- While Kimel bars private age discrimination suits for monetary relief under Federal law, you may be permitted to sue State officials, in their official capacity, for purely injunctive relief under the ADEA. This theory will have to be tested in the courts by private litigants.

- Your EEOC charge may claim more than one type of discrimination - disability or a Title VII basis (race, color, religion, sex or national origin) - plus age. Kimel does not bar title VII or Americans with Disabilities Act (ADA) suits in Federal court. However, State law age discrimination suits may not be appended to a Title VII or ADA suit in Federal court.

- Title VII and ADA suits may also be filed in State Court. Therefore, Title VII or ADA suits can be filed in State court with a State Law suit that includes, as applicable, State law age discrimination claims.

If you have any questions on your rights under the EEOC statutes, or if you wish to be referred to a private attorney who may consider handling your case, please call the EEOC office where you filed your charge. You may find additional information on the EEOC internet web site as www.eeoc.gov.