IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TRACY DEBOSE LAMPKIN, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:06-CV-538-WKW |
| | ) | |
| UNITED PARCEL SERVICE, INC, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Lisa H. Cassilly
Jeremy D. Tucker
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

Donald R. James, Jr.
BAXLEY, DILLARD, DAUPHIN & McKNIGHT
2008 3rd Avenue South
Birmingham, Alabama 35233

Attorneys for Defendant

## I.    INTRODUCTION

This is an employment action alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") and the Equal Pay Act of 1963 ("Equal Pay Act"), 29 U.S.C. § 206(d)(1).  Defendant UPS is an international parcel delivery service providing parcel delivery services for both commercial and residential customers throughout the world. Plaintiff Tracy Lampkin is currently employed as a part-time supervisor at a UPS center located in Dothan, Alabama.  Plaintiff alleges in the instant lawsuit that (1) UPS wrongfully failed to offer her certain positions which were filled by other employees; (2) her former manager, now retired from UPS, retaliated against her for asking about the alleged failure to move her to a different position by denying her job transfers; and (3) UPS once gave a male coworker a greater percentage increase in salary than Plaintiff received in that same year.

As a matter of law, UPS should be granted summary judgment on all of Plaintiff's claims. Most of the matters about which Plaintiff complains occurred years ago and are time barred. Further, as explained in more detail below, Plaintiff cannot establish the essential elements of any of her claims of discrimination or retaliation.  The undisputed facts show that none of the positions Plaintiff contends she should have been offered would have been a promotion, and, in fact, the majority of the position changes at issue would have represented a step back from the supervisory role that Plaintiff held at the time.  Likewise, Plaintiff concedes that the alleged criticism of her performance by her former manager, the sole basis of her claim of retaliation, never resulted in any discipline of the Plaintiff.  Under these circumstances, Plaintiff cannot demonstrate that she was subjected to an adverse action.  Even assuming that Plaintiff could prove a *prima facie* case as to any of her claims, UPS had legitimate, nondiscriminatory reasons for each of the decisions about which Plaintiff complains, and Plaintiff cannot show these

reasons to be pretextual. Plaintiff's Equal Pay Act claim is also infirm. Her allegations in this

regard are limited to a comparison of herself to one other supervisor, a male who briefly worked

in the same capacity as Plaintiff. It is undisputed that Plaintiff was paid significantly more than

the male to whom she compares herself, and in the one year in which he received a slightly

greater percentage increase in salary than Plaintiff the difference was merely reflective of the fact

that Plaintiff was at the top end of the pay grade for her position while he was not. In sum, based

on the evidence of record and the statement of undisputed material facts and citations of

authority herein, UPS respectfully submits that it is entitled to judgment in its favor on all claims.

## II. STATEMENT OF MATERIAL FACTS

A.    Plaintiff's Employment at UPS.

Plaintiff, a black female, began working for UPS in January 1997 at the Company's

Dothan, Alabama Package Center. (Deposition of Plaintiff ("Pl's Dep.") 96.)[1] Plaintiff was

initially employed as an hourly, unionized worker in the Center's local sort operations. (Id. 96-

99.) The local sort operations involve the sorting and moving out of packages to incoming

drivers. (Id.) In December 2001, Plaintiff was promoted and became a part-time supervisor

responsible for oversight of the local sort operations. (Id. 102.) Plaintiff currently holds this

position. (Id.) As a part-time supervisor, Plaintiff is a salaried, non-union employee. (Id. 103.)

B.    Plaintiff's Allegation that She was Discriminatorily Denied Job Transfers.

Plaintiff alleges that she was discriminatorily denied transfers to the following positions:

(i) operational management specialist ("OMS"), (ii) part-time package center supervisor, (iii)

part-time supervisor assigned to oversee preload operations, and (iv) package car driver. The

undisputed material facts regarding each of the subject positions are reviewed below.

- Operational Management Specialist – Plaintiff alleges that she was wrongfully denied a transfer to a part-time OMS position in Dothan on two occasions, once in July 2003 and a second time in February 2005. (Pl's Dep. 129, 152.) The OMS position at UPS no longer exists. (Declaration of Jeff Poulter ("Poulter Decl.") ¶ 4).[2] Formerly, this position was a nonunion, hourly position which involved the performance of clerical and administrative duties. (Id.) It was not a management position and did not involve the supervision of other personnel. (Id.)

The OMS positions about which Plaintiff complains were filled by temporary employees who were performing clerical and related duties immediately prior to their being placed in the job. (Pl's Dep. 131-32, 138, 173; Poulter Decl. ¶ 5.) More specifically, a part-time OMS position was filled at the Dothan Center in July 2003 by Tammy Nelson and in February, 2005 a second part-time OMS position was filled by Angie Blessman. (Pl's Dep. 130, 173; Poulter Decl. ¶ 5.) Both Ms. Nelson and Ms. Blessman initially worked at UPS as temporary workers pursuant to an agreement between UPS and a temporary personnel agency.[3] (Poulter Decl. ¶ 5.) While employed by such a personnel agency, Ms. Nelson trained and worked at UPS performing a variety of office duties. (Id.) Thereafter, effective July 2003, she was hired by UPS to fill a permanent part-time OMS position performing the same job functions she previously performed as a temporary worker. (Pl's Dep. 132; Poulter Decl. ¶ 5.) Similarly, Ms. Blessman began performing clerical duties at the Dothan Center before February 2005 as a temporary worker provided by a personnel agency. (Poulter Decl. ¶ 5.) UPS decided to make Ms. Blessman a permanent hire in February 2005, at which time Ms. Blessman became an employee of UPS and

---

[1]  The Deposition of Tracy D. Lampkin is attached hereto as Exhibit A.
[2]  The Declaration of Jeff Poulter is attached hereto as Exhibit B.
[3]  From time to time, especially where it is not certain that a permanent position is warranted, UPS makes use of temporary personnel who are supplied by employee leasing agencies. (Poulter Decl. ¶ 5.)

continued to perform OMS duties.  (<u>Id</u>.)

There were legitimate, nondiscriminatory reasons for filling the OMS positions with Ms. Nelson and Ms. Blessman, rather than with Plaintiff.  (Poulter Decl. ¶ 6.)  Because Ms. Nelson and Ms. Blessman were already performing many of the clerical and administrative duties that comprised the OMS position pursuant to an employee leasing arrangement with a temporary personnel agency, (Pl's Dep. 131-32, 138, 173; Poulter Decl. ¶ 6.), they required little, if any, additional training when they were placed in the OMS positions.  (Poulter Decl. ¶ 6.)  Further, by filling the newly added positions with Ms. Nelson and Ms. Blessman, rather than with Plaintiff or another person already employed by UPS, UPS did not create a job vacancy.  (<u>Id</u>.)  If UPS had placed Plaintiff in the OMS position, her movement would have created a part-time supervisor vacancy at the Dothan Center, requiring UPS to identify and train a replacement.  (<u>Id</u>.)  Because the OMS position was not a management position and did not involve supervising other personnel, moving from a part-time supervisor to a part-time OMS position would be viewed at UPS as a step back, and UPS prefers not to move people in its organization backward.  (<u>Id</u>.)  Indeed, Plaintiff earned more than Ms. Nelson and more than Ms. Blessman after they became employed by UPS in the OMS position, and Plaintiff has been paid considerably more than these women at all times since they were hired.  (<u>Id</u>.)

- <u>Part-time Package Center Supervisor</u> – In recent years, the OMS position at UPS has been phased out, and its duties have been redistributed.  (<u>Id</u>.)  A majority of the former OMS duties are now being performed by employees who are classified as part-time package center supervisors.  (<u>Id</u>.)  The package center supervisor position is a new position which was introduced in the Alabama District in the third quarter of 2005.  (<u>Id</u>.)  The job requirements for package center supervisor are greater than those of the former OMS position, and the position is

also at a higher grade. (Id.) The package center supervisor position is considered a management position, and persons in the job are expected to be able to supervise other personnel. (Id.)

Plaintiff complains that she was not given a part-time package center supervisor position that was filled by Jennifer Wesley in November 2005. (Pl's Dep. 197-98; Poulter Decl. ¶ 8).[4] Before November 2005, Ms. Wesley was working in Dothan as an hourly employee performing many of the clerical tasks that are part of the responsibilities of the new package center supervisor position, including operations clerk and data capture duties. (Poulter Decl. ¶ 8.) Ms. Wesley had made UPS management aware of her desire to be promoted and also had taken steps to be qualified to be placed in a supervisory position at UPS. (Id.) In fact, Ms. Wesley successfully completed in September 2005 all of the components of the UPS Management Assessment and Promotion Process ("MAPP"), which is a process of performance testing and assessment utilized to assist UPS in identifying and preparing people who have the knowledge, skills, and abilities to meet current and future business needs. (Id. ¶ 9.)

UPS has no record of Plaintiff expressing any interest in a move to a package center supervisor position. (Id. ¶ 10.) In any event, if UPS had moved Plaintiff into the part-time package center supervisor position, it would not have been a promotion for her and, at best, would have constituted only a lateral move that would not have involved any increase in compensation or additional benefits of employment. (Id.) The same was not true in Ms. Wesley's case because, for her, the part-time package center supervisor position represented an opportunity to advance. (Id.) UPS has a long history of promoting from within and, whenever possible, seeks to advance personnel based on their individual merit, performance and ability to

---

[4] Plaintiff actually complains that she was not made a part-time office supervisor in or about November 2005. (Pl's Dep. 197-98.) No such position exists at UPS, so Plaintiff presumably is referring to the part-time package center supervisor position, which was first created around this time. (Poulter Decl. ¶ 7.)

qualify for a position. (Id.) Ms. Wesley had expressed a desire to be promoted from her hourly position at UPS, and the MAPP process she had earlier completed indicated that she was a good candidate for the package center supervisor position, a role that entailed many of the duties she had been performing in an hourly employee capacity. (Id.) If UPS moved Plaintiff laterally from her existing part-time supervisor position on the local sort to the part-time package center supervisor position, then UPS would have been forced to train not only Plaintiff to perform the duties of the package center supervisor job, but also would have had to train a second person to perform the duties of the supervisor's position on the local sort vacated by Plaintiff. (Id.) By promoting Ms. Wesley, who already had significant experience with many of the clerical and administrative duties which are part of the package center supervisor's role, UPS only needed to invest in training one person. (Id.)

- Part-time Supervisor overseeing Preload – Plaintiff complains in this case that she was not moved from the part-time supervisor's position on the local sort to a part-time supervisor position on preload. (Pl's Dep. 139-40.) According to Plaintiff, in the beginning of 2004, she wanted to switch places with another part-time supervisor, Ryan Brown, when he moved from the a.m. shift, where he had responsibility for oversight of preload activities, to the p.m. shift to work with her as a part-time supervisor during sorting operations. (Pl's Dep. 141.)[5] UPS has no record of Plaintiff requesting such a move, and a transfer from supervising the local sort to preload is not considered a promotion or an advancement opportunity within UPS. (Poulter Decl. ¶ 11.) At most, moving from supervising sort operations to supervising preload operations, or vice versa, is a lateral move. (Id.) Such a lateral move would not involve an increase in

---

[5] Plaintiff's recollection of the events is admittedly imperfect. (Pl's Dep. 194.) In truth, although Brown moved to the p.m. shift as a part-time supervisor with Plaintiff in February 2005, a full-time supervisor took over his former supervisory duties on the a.m. shift, and there was no vacancy for a part-time supervisor overseeing preload created by Brown's reassignment.

compensation or greater benefits of employment.  In fact, both roles are considered to be the same for classification purposes at UPS.  (Id.)

A year ago, Jeff Poulter, the Human Resource Manager for UPS's Alabama District, met in person with Plaintiff and offered to make arrangements for her to be transferred to a part-time supervisor role on the preload if that is what she desired.  (Id.)  Poulter told Plaintiff at that time that all that was required was for her to confirm she wanted him to transfer her, but she did not accept his offer, nor would she make any response at all.  (Id.)

- Package Car Driver – Plaintiff also complains that she was not offered a package car driver position that was filled by Jason Jones in April, 2004 and a second package car driver position that was filled in June, 2006 by Ryan Brown.  (Pl's Dep. 142, 211.)  Package car drivers at UPS are hourly employees, and their employment is covered by a collective bargaining agreement ("CBA") between UPS and the International Brotherhood of Teamsters.  (Poulter Decl. ¶ 12.)  Moving from a salaried supervisor position to an hourly, bargaining unit position as a driver does not represent a promotion at UPS.  (Id.)

Pursuant to the CBA between UPS and the Teamsters, the majority of all package car driver positions at UPS are filled by hourly personnel based on seniority and bidding rights.  (Id. ¶ 13.)  However, the CBA permits UPS to hire or place personnel who are not already subject to the agreement into a certain limited number of package car driver positions.  (Id.)  When this occurs, District Human Resources, not Center management, makes the determination regarding who should be placed in the job.  (Id.)

Before the commencement of this lawsuit, Human Resources had no information suggesting that Plaintiff had an interest in leaving her job as a supervisor and becoming a package car driver.  (Id. ¶ 14.)  UPS follows a protocol for moving personnel into driving

- 7 -

positions in those instances where a position can be filled by someone outside of the bidding process. (<u>Id</u>.) In order to be considered for such an opportunity, it is the responsibility of the employee who desires to be moved to a package car driver position to submit a Letter of Interest to UPS Human Resources. (<u>Id</u>.) In this manner, Human Resources personnel are alerted to the employee's interest. (<u>Id</u>.) Under UPS policy, a Letter of Interest expires at the end of the calendar year and, if an employee wishes to renew his or her expression of interest, he or she must resubmit a Letter of Interest the following year. (<u>Id</u>.) The use of Letters of Interest to alert Human Resources to an employee's desire to be considered for such a position change is a long-standing practice that is well known throughout the District. (<u>Id</u>.) Information regarding submission of Letters of Interest is made available to supervisory personnel like Plaintiff in a variety of ways, including on the UPS intranet. (<u>Id</u>.)

Plaintiff admits that she has never submitted a Letter of Interest to UPS informing Human Resources that she wishes to be considered for a driving position. (Pl's Dep. 144, 211, 213; Poulter Decl. ¶ 14.) Mr. Jones and Mr. Brown, on the other hand, submitted Letters of Interest to Human Resources stating their desire to be considered for driving positions before they were placed in their respective driving jobs. (Pl's Dep. 142; Poulter Decl. ¶ 14.)

C.    <u>Plaintiff's Allegations of Retaliatory or Discriminatory Discipline.</u>

Plaintiff alleges that she was disciplined unfairly in comparison to white employees at the Dothan center. (Pl's Dep. 235.) Importantly, the only disciplinary actions Plaintiff complains about are write-ups that she prepared herself. (<u>Id</u>.) In these write-ups, Plaintiff documented matters relating to her own performance as a part-time supervisor, including working unauthorized hours, failing to log out all of the package scanners on the scanner control log, and failing to set up scanners correctly. (Pl's Dep. 237-41.) Plaintiff does not dispute that the events

about which she wrote herself up occurred.  (Id.)  It is also uncontroverted that, on these occasions, no action was taken against Plaintiff, and she was merely instructed by her manager to prepare a write-up of the incident to document it and to encourage her to improve her performance.  (Pl's Dep. 241.)  Further, Plaintiff acknowledges that white, male employees to whom she would compare herself were requested to write themselves up in the same manner when errors were made, including on some of the same occasions that Plaintiff complains she was asked to prepare a write-up.  (Pl's Dep. 240, Ex. 6, UPS – 0051-0052.)  Plaintiff admits that she has never – at any time – received a disciplinary notice or write-up from UPS management.  (Id. 245-46.)  She also concedes that she has never been suspended, nor has she ever had her compensation reduced for any reason.  (Id. 241, 244-46, 253.)

The only other purported basis for Plaintiff's allegation of discriminatory or retaliatory discipline is her contention that, on three isolated occasions sometime before the summer of 2005, former Center Manager Robert Icenogle treated her harshly.  (Id. 241-42.)  First, Plaintiff alleges that Icenogle yelled at her during an exchange in 2003 regarding some late deliveries at the Dothan center.  (Id. 247-48.)  Next, Plaintiff alleges that Icenogle was harsh with her in or about February 2005 when she asked about moving to an OMS position and he responded with "strongness" that taking the position might mean a pay cut for her.  (Id. 248-50.)  Lastly, Plaintiff alleges that another unidentified employee once told her that she overheard Icenogle say that "[Plaintiff] don't do nothing but just stand[] up there."  (Id. 252.)

Icenogle was the Dothan Center Manager for a period of time after Plaintiff became a supervisor until approximately the end of April 2005.  (Poulter Decl. ¶ 16.)  Icenogle retired from UPS in 2005, but ceased serving as the Center Manager in Dothan earlier than his official retirement date as UPS commenced transitioning the role in advance of his retirement and he,

- 9 -

himself, took an extended medical leave of absence immediately before his retirement. (<u>Id</u>.) After the beginning of May, 2005, Icenogle was no longer Center Manager in Dothan and had no responsibility for personnel decisions or discipline at the Center. (<u>Id</u>.) Accordingly, Plaintiff's complaints regarding Icenogle concern only events prior to May 2005.[6]

D.      <u>Plaintiff's Allegation that She Received Discriminatory Pay Raises</u>.

        Plaintiff also complains in this case that she believes she has been paid unfairly in comparison to Ryan Brown, a white male employee. (Pl's Dep. 220.) Specifically, Plaintiff complains about the difference in hers and Brown's pay during the years 2003 through 2005 while both of them were working as part-time supervisors in Dothan. (<u>Id</u>.) In truth, Ms. Lampkin was paid more than Mr. Brown in every year she and he were employed as part-time supervisors. (Poulter Decl. ¶ 15.) In 2003, Mr. Brown earned $1,325 per month as a part-time supervisor, while Plaintiff earned $1700 per month. (<u>Id</u>.) After each received a raise in 2004, Mr. Brown earned $1345 per month and Plaintiff earned $1750 per month. (<u>Id</u>.) Following raises received in 2005, Mr. Brown earned $1440 per month and Ms. Lampkin earned $1800 per month. (<u>Id</u>.) While he and she were part-time supervisors, Mr. Brown received a greater percentage increase than Plaintiff in one year only – 2005. (<u>Id</u>.) The differential in the percentage increase they received that year was reflective of the fact that Plaintiff was already at the top end of the pay scale for the position, while Mr. Brown was not. (<u>Id</u>.)

E.      <u>Plaintiff's Allegation of Retaliation</u>.

        Plaintiff identifies Robert Icenogle as the only individual who allegedly retaliated against her for complaining about discrimination. (Pl's Dep. 254-55.) According to Plaintiff's

---

[6] Even during the period of time that Icenogle was the Center Manager in Dothan, it is undisputed that he never took any disciplinary action against Plaintiff. (Pl's Dep. 253.) Plaintiff admits that Icenogle did nothing more than speak to her in a manner she thought was harsh on the identified occasions and instruct her to write-up problems occurring on the local sort while she was a part-time supervisor overseeing those operations. (<u>Id</u>. 235, 241-42.)

testimony, the only manner in which Icenogle retaliated against her was to deny her the position

transfers she desired.  (Id. 254.)  It is uncontroverted that the only potential job transfers at issue

in this case that Icenogle could be alleged to have improperly denied Plaintiff were the two OMS

jobs filled by Angie Blessman and Tammy Nelson.[7]  It is impossible for Icenogle to have

retaliated against Plaintiff for complaining about not getting the OMS positions by denying her

transfer to the very same positions.  Indeed, this alleged retaliatory action had already occurred

and was, in fact, the trigger for her protected activity.[8]

F.    Procedural History.

Plaintiff filed a Charge of Discrimination with the EEOC on November 3, 2005.  (Pl's

Dep. 104.)  Plaintiff filed this action on June 16, 2006.

## III.    ARGUMENT AND CITATION OF AUTHORITY

A.    Summary Judgment Standard.

Federal Rule of Civil Procedure 56(c) provides that summary judgment should be granted

where the evidence shows that "there is no genuine issue as to any material fact and . . . the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party moving for

summary judgment bears the initial burden of "pointing out to the district court – that there is an

absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S.

317, 325 (1986).  Specifically, the moving party should identify those portions of the pleadings,

depositions, affidavits and written discovery responses that demonstrate the absence of a genuine

---

[7]  Center Managers do not make decisions regarding transfers of personnel to package car driver positions (Poulter Decl. ¶ 13), and Ryan Brown's transfer to a package car driver job occurred the year following Icenogle's retirement.  (Pl's Dep. 211; Poulter Decl. ¶ 16.)  Likewise, the part-time package center supervisor's job occupied by Jennifer Wesley was filled after Icenogle ceased to be the Dothan Center Manager and while he was on a medical leave just before his retirement.  (Pl's Dep. 199; Poulter Decl. ¶¶ 8, 16.)

[8]  Plaintiff does not contend she ever complained to Icenogle concerning alleged discrimination and, at most, she complained to other managers only that Icenogle had not transferred her.  (Pl's Dep. 256-68.)  There is no evidence these complaints made to others were ever shared with Icenogle.

issue of material fact.  Id. at 323.

Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Id. at 322.  Rule 56 requires the non-movant to "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'"  Id. at 324.  Moreover, the nonmoving party must demonstrate "'a substantial conflict in evidence to support a jury question.'"  Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998).

The Supreme Court has observed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  Celotex, 477 U.S. at 327.  Consistent with this admonition, the Eleventh Circuit has noted that "[s]ummary judgments for defendants are not rare in employment discrimination cases,"  Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990), and that summary judgment is just as appropriate in employment discrimination cases as it is in other types of cases.  Chapman v. AI Transp., 229 F.3d 1012, 1026 (11th Cir. 2000).

B.    Plaintiff Cannot Establish Her Race or Sex Discrimination Claims.

Plaintiff claims that UPS discriminated against her because of her race and sex, in violation of Title VII and the Equal Pay Act.  Where, as here, a plaintiff relies on circumstantial evidence in support of her claim of discrimination, courts invoke the burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to analyze the claims.[9]

---

[9]  Plaintiff does not make any claims that anyone at UPS ever overtly discriminated against her on the basis of race or sex, such as by making racial or sexist remarks, but rather relies solely on her contention that others were treated more favorably.  (Pl's Dep. 217, 234, 253).

See, e.g., Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997).

The plaintiff carries the initial burden of establishing a *prima facie* case of discrimination. Hankinson v. Thomas County Sch. Sys., No. 07-11948, 2007 WL 4226389, at *3 (11th Cir. Dec. 3, 2007) . To establish a *prima facie* case of race or sex discrimination, Plaintiff must show that (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) the employer treated similarly situated employees outside of her protected class more favorably; and (4) she was qualified to do the job. EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000); Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). If Plaintiff establishes her *prima facie* case, an "exceedingly light" burden of production shifts to UPS to articulate a legitimate, non-discriminatory reason for its actions. Meeks v. Computer Assocs. Int'l, 15 F.3d 1013, 1019 (11th Cir. 1994); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). Once UPS satisfies this burden, the "presumption of discrimination 'drops out of the picture,'" and Plaintiff must prove that its legitimate, non-discriminatory reasons were pretext for unlawful discrimination. Reeves, 530 U.S. at 143. The ultimate burden of proving by a preponderance of the evidence that UPS intentionally discriminated against Plaintiff on the basis of race or sex remains at all times with Plaintiff. Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1184 (11th Cir. 1984).

1.    Most of Plaintiff's Discrimination Claims are Time Barred.

The majority of Plaintiff's discrimination claims should be dismissed as a matter of law because Plaintiff failed to file her EEOC charge within the requisite 180 days of some of the challenged employment practices. Before asserting a Title VII claim in court, a plaintiff must first file a timely charge of discrimination with the EEOC within 180 days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1); Pijnenburg v. W. Ga.

Health Sys., Inc., 255 F.3d 1304, 1305 (11th Cir. 2001) ("It is settled law that in order to obtain

judicial consideration of such a claim, a plaintiff must first file an administrative charge with the

EEOC within 180 days after the alleged unlawful employment practice occurred.").  If a party

fails to comply with this charge-filing requirement, she cannot assert a Title VII claim in court.

Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002) ("A claim is time barred if it is

not filed within [the 180- or 300-day] time limits"); Cooper v. S. Co., 390 F.3d 695, 732 n. 22

(11th Cir. 2004); E.E.O.C. v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1271 (11th Cir. 2002).

It is undisputed that Plaintiff filed her charge with the EEOC on November 3, 2005 (Pl's

Dep. 104).  All of the following alleged discriminatory acts occurred more than 180 days before

that date: (1) OMS position filled by Tammy Nelson in July 2003 (more than 2 years before

charge); (2) alleged vacancy created by Ryan Brown's move from a.m. to p.m. shift as a part-

time supervisor over local sort in early 2004 (more than 1 year before charge); (3) package car

position filled by Jason Jones in April 2004 (more than 1 year before charge); (4) OMS position

filled by Angie Blessman in February 2005 (more than 8 months before charge); (5) 2003

disciplining by Icenogle (more than 2 years before charge); (6) February 2005 disciplining by

Icenogle (more than 8 months before charge); and (7) 2004 pay raise (more than 9 months before

charge).  See generally supra Section II.B.

2.      Plaintiff Cannot Establish a *Prima Facie* Case of Race or Sex Discrimination.

Even if some of Plaintiff's claims were not time-barred, they should all be dismissed as a

matter of law because Plaintiff cannot establish a *prima facie* case of discrimination.

a.      Plaintiff's Failure-to-Promote Claims

The majority of Plaintiff's discrimination claims are based on alleged denials of

promotions to Plaintiff.  A plaintiff alleging this type of discrimination must establish a *prima*

*facie* case by showing that (1) she is a member of a protected class; (2) she was qualified for and applied for the promotion; (3) she was rejected despite these qualifications; and (4) other equally or less qualified employees who were not members of the protected class were promoted. Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004).

      i.    *July 2003 and February 2005 OMS Positions*

Plaintiff's allegations that she was discriminatorily denied a transfer to a part-time OMS position in July 2003 and February 2005 fail for three distinct and equally compelling reasons. First, a move into an OMS position would not have represented a promotional opportunity for Plaintiff. (Poulter Decl. ¶ 6.) To the contrary, a move from part-time supervisor to OMS would have been viewed as a professional step backward. (Id.) Unlike the part-time supervisor position Plaintiff already occupied, the OMS position was not a management position and did not involve supervising other personnel. (Id.) Further, Plaintiff earned more than Nelson and Blessman, the two employees who filled the positions, after they became employed in the positions. (Id.) In fact, Plaintiff has been paid more than them at all times since they were hired. (Id.)

Even if the move from part-time supervisor to OMS was a promotion, UPS had a legitimate, non-discriminatory reason for filling the OMS openings with the individuals that it did. Before Nelson and Blessman were hired by UPS, they were already performing many of the duties that comprised the OMS position. (Pl's Dep. 131-32, 138, 173; Poulter Decl. ¶ 6.) In fact, Plaintiff readily admits that Nelson's job functions did not change when Nelson moved to OMS. (Pl's Dep. 131-32.) Similarly, she admits that Blessman was trained in OMS functions before she moved to OMS. (Id. 173.) See Harrington v. Disney Reg'l Entm't, Inc., No. 06-12226, 2007 WL 3036873, at *10 (11th Cir. Oct. 19, 2007) (holding that defendant had a legitimate, non-discriminatory reason for promoting an alleged comparator where comparator had previous

- 15 -

experience doing the job at issue and plaintiffs did not); Walker v. Prudential Prop. & Cas. Ins. Co., 286 F.3d 1270, 1278 (11th Cir. 2002) (holding that employer had a legitimate, non-discriminatory reason for promoting an alleged comparator where comparator had experience and training in the position).

Further, if Plaintiff had been moved into the OMS position rather than Nelson or Blessman, UPS would have had to train two employees (*i.e.*, Plaintiff would have had to be trained for OMS and the employee who moved into Plaintiff's vacant part-time supervisor position would have had to be trained as well). (Poulter Decl. ¶ 10.) Thus, it saved UPS time and money to move Nelson and Blessman into the position rather than Plaintiff. See Williams v. St. Joan of Arc Church, 226 F. App'x 180, 188 (3d Cir. 2007) (holding that the employer had a legitimate, non-discriminatory reason where it acted out of economic and efficiency concerns); Aviles v. Cornell Forge Co., 183 F.3d 598, 604 (7th Cir. 1999) (holding that the employer had a legitimate, non-discriminatory reason where its actions saved money for the company); May v. Shuttle, Inc., 129 F.3d 165, 173 (D.C. Cir. 1997) (holding same).

ii.     *November 2005 Package Center Supervisor Position*

Plaintiff's allegation that she was discriminatorily denied a transfer to a part-time package center supervisor position fails for three reasons. As an initial matter, it is undisputed that Plaintiff never applied for the position. (Pl's Dep. 209; Poulter Decl. ¶ 10.) See Mack v. ST Mobile Aerospace Eng'g, Inc., 195 F. App'x 829, 845 (11th Cir. 2006) (holding that plaintiff failed to establish a *prima facie* case of discrimination where the employer had no record of plaintiff applying for the position at issue); Walker, 286 F.3d at 1275 (holding that plaintiffs failed to establish *prima facie* cases of discrimination where the record showed that neither had applied for the position at issue). Therefore, the relevant decision-maker had no knowledge that

Plaintiff was even interested in the position before it was filled.  See Walker, 286 F.3d at 1275 ("If a decision-maker is unaware of the plaintiff's existence, then he is simply unable to discriminate against her, and any presumption of discrimination is unfounded.").

Second, a move to part-time package center supervisor would not have represented a promotional opportunity for Plaintiff.  (Poulter Decl. ¶ 10.)  Rather, at best, it would have constituted only a lateral move that would not have involved any increase in compensation or additional benefits of employment.  (Id.)  Plaintiff's non-selection for the part-time package center supervisor, therefore, was not an adverse employment action under Title VII.  See Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998) (holding that if a transfer involves no significant changes in an employee's conditions of employment, the denial or receipt of the transfer does not constitute an adverse employment action.).

Further, even if the move to part-time package center supervisor was a promotion, UPS had a legitimate non-discriminatory reason for filling the opening with Jennifer Wesley instead of Plaintiff.  (Poulter Decl. ¶ 10.)  As mentioned above, if UPS had moved Plaintiff into the part-time package center supervisor position, it would not have been a promotion.  (Id.)  The same was not true in Wesley's case, however, because, for her, the part-time package center supervisor position represented an opportunity to advance.  (Id.)  Wesley had expressed a desire to be promoted from her hourly position at UPS, and the MAPP process she had earlier completed indicated that she was a good candidate for the package center supervisor position.  (Id.)

Moreover, if UPS had moved Plaintiff laterally from her existing part-time supervisor position on the local sort to the part-time package center supervisor position, then UPS would have been forced to train not only Plaintiff to perform the duties of the package center supervisor job, but also would have been required to train a second person to perform the duties of the

- 17 -

supervisor's position on the sort vacated by Plaintiff.  (Id.)  Conversely, by promoting Wesley, who already had significant experience with many of the clerical and administrative duties which are part of the package center supervisor's role, (Pl's Dep. 197, 199-200), UPS only needed to invest in training one person.  (Poulter Decl. ¶ 10.)  See Harrington, 2007 WL 3036873 at *10.

       iii.    *2004 Part-time Supervisor Position in Preload*

Plaintiff's allegation that she was discriminatorily denied a transfer to a part-time supervisor position in preload fails for two reasons.  As an initial matter, UPS has no record of Plaintiff requesting such a move.  (Poulter Decl. ¶ 11.)  See Mack, 195 F. App'x at 845; Walker, 286 F.3d at 1275.  Further, moving from supervising sort operations to supervising preload operations, or vice versa, is merely a lateral move.  (Poulter Decl. ¶ 11.)  See Alvarado v. Tex. Rangers, 492 F.3d 605, 612 (5th Cir. 2007) ("It is well established that the denial of a purely lateral transfer is not an adverse employment action redressable under Title VII."); Reese v. State of Mich. Family Independence Agency, 31 F. App'x 172, 173 (6th Cir. 2002) (holding that "the denial of a request for a lateral transfer is not an adverse employment action for the purposes of Title VII"); Sanchez, 164 F.3d at 532 n.6 (10th Cir. 1998) ("If a transfer is truly lateral and involves no significant changes in an employee's conditions of employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer adverse employment action.").

       iv.    *April 2004 and 2006 Package Car Driver Positions*

Plaintiff's allegations that she was discriminatorily denied a transfer to a package car driver position in April 2004 and June 2006 (Pl's Dep. 142, 211) fail for three reasons.  First, package car drivers at UPS are hourly employees, and their employment is covered by the CBA.  (Poulter Decl. ¶

12.)  Moving from a salaried supervisor position to an hourly, bargaining unit position as a driver does not represent a promotion at UPS.  (Id.)

Second, even if it was a promotion, Plaintiff did not apply for the position.[10]  (Pl's Dep. 144, 211.)  In fact, before the commencement of this lawsuit, UPS Human Resources had no information suggesting that Plaintiff had an interest in leaving her job as a supervisor and becoming a package car driver.  (Poulter Decl. ¶ 12.)  UPS follows a protocol for moving personnel into driving positions in those instances a position can be filled by someone outside of the bidding process.  (Id.)  In order to be considered for such an opportunity, it is the responsibility of the employee who desires to be moved to a package car driver position to submit a Letter of Interest to UPS Human Resources to alert it to the employee's interest.[11]  (Id.)

Plaintiff has never submitted a Letter of Interest to UPS informing Human Resources that she wished to be considered for a driving position (Pl's Dep. 144, 211).  Therefore, the relevant decision-maker, Human Resources, had no knowledge that Plaintiff was interested in the package car driver position.  (Poulter Decl. ¶ 12.)  In contrast, Jones and Brown, the employees who ultimately filled the positions, submitted Letters of Interest stating their desire to be considered for driving positions before they were placed in their respective driving jobs.  (Id.; Pl's Dep. 142.)

---

[10]  Plaintiff has attempted to explain away her admitted failure to follow the required process for pursuing a driving position by claiming she was led to believe she needed a college degree to be a driver.  (Pl's Dep. 211.)  The basis for this contention is Plaintiff's testimony that she went to a Manager at the Dothan Center, Chris Borden, after she learned that Ryan Brown was moved to a package car driver position to ask why she could not have had the job.  (Id. 213.)  Allegedly, Borden indicated that UPS prefers drivers to have degrees.  (Id. 211.)  Without conceding that Borden made such a remark, a matter he denies, it is irrelevant.  According to Plaintiff's own testimony, this is a conversation that took place after the job was filled and cannot be asserted by her as an excuse for not pursuing proper channels to be considered for the job before it was filled.  (Id. 213.)  Further, it is undisputed that Center management does not make decisions regarding who can be placed in a package car driver position.  (Poulter Decl. ¶¶ 12-13.)

[11]  Plaintiff's claims here also fail because the individual that she alleges discriminated against her is Robert Icenogle (Pl's Dep. 138-40), who was not the relevant decision-maker.  While Icenogle may have been the Center Manager at that time, the actual decision-maker would have been UPS Human Resources.  (Poulter Decl. ¶ 12.)

- 19 -

b.    <u>Plaintiff's Discriminatory Discipline Claims</u>

Plaintiff claims that she was discriminatorily disciplined because she had to prepare write-ups for herself and because Robert Icenogle verbally abused her.  (Pl's Dep. 235, 241-42.) To establish a *prima facie* case of discriminatory discipline, Plaintiff must show that (1) she belongs to a protected class under Title VII; (2) she was qualified for the job; and (3) that a similarly situated employee engaged in the same or similar misconduct but did not receive similar discipline.  <u>See</u> <u>Nicholas v. Bd. of Trustees of the Univ. of Ala.</u>, No. 06-14662, 2007 WL 3023209, at *3 (11th Cir. Oct. 17, 2007); <u>Lathem v. Dep't of Children & Youth Servs.</u>, 172 F.3d 786, 792 (11th Cir. 1999); <u>Holifield</u>, 115 F.3d at 1562.  Plaintiff's discriminatory discipline claims fail because she cannot establish the third prong of the *prima facie* case in that she fails to identify <u>any</u> similarly situated employees outside of her protected class that were treated more favorably.  <u>See</u> <u>Nicholas</u>, 2007 WL 3023209, at *3 (holding that plaintiff failed to establish a *prima facie* case for disparate discipline because he made no allegations that defendant failed to discipline a similarly situated employee for similar conduct).  Furthermore, Plaintiff's claims fail because she cannot show that the write-ups or alleged verbal abuse resulted in a serious and material change in the terms or conditions of her employment.  <u>See</u> <u>Davis v. Town of Lake Park, Fla.</u>, 245 F.3d 1232, 1239 (11th Cir. 2001) (holding that in order to be adverse, the employment action at issue must cause a "serious and material change" in a term, condition or privilege of the plaintiff's employment).  It is undisputed that Plaintiff was never suspended, never written-up by anyone other than herself, and never docked any pay as a result of any of the write-ups or alleged verbal abuse about which she now complains.  (Pl's Dep. 241, 253.)

c.    <u>Plaintiff's Disparate Pay Claims</u>

Plaintiff alleges discrimination in the form of disparate pay under both Title VII and the

Equal Pay Act (Pl's Dep. 220; Amended Complaint ¶ 32.)  Specifically, Plaintiff claims that Icenogle gave her lower pay raises than Brown, a white male, during the years 2003 through 2005 while both she and Brown were working as part-time supervisors.  (Pl's Dep. 220-21.)

To establish a *prima facie* case of disparate pay discrimination under Title VII, Plaintiff must show that she occupies a job similar to that of higher paid persons who are not members of her protected class.  See Nicholas, 2007 WL 3023209, at *2 (citing Meeks, 15 F.3d at 1019). Plaintiff fails to establish a *prima facie* case because, in truth, Plaintiff was paid more than Brown in every year she and he were employed as part-time supervisors.  (Poulter Decl. ¶ 15.) In 2003, Brown earned $1,325 per month as a part-time supervisor while Plaintiff earned $1,700 per month.  (Id.)  In 2004, Brown earned $1,345 per month and Plaintiff earned $1,750 per month.  (Id.)  In 2005, Brown earned $1,440 per month, and Plaintiff earned $1,800 per month. (Id.)  While he and she were both part-time supervisors, Brown received a greater percentage increase than Plaintiff in one year only – 2005.  (Id.)  Because Brown was never paid more than Plaintiff, she fails to establish a *prima facie* case of disparate pay discrimination.  To the extent Plaintiff argues that Brown's receipt of a greater percentage pay increase in 2005 was discriminatory, UPS had a legitimate, non-discriminatory reason that Plaintiff cannot rebut.  (Id.) The differential in the 2005 pay increase reflected the fact that Plaintiff was already at the top end of the pay scale for the position, while Brown was not.  (Id.)

In order to make out a *prima facie* case under the Equal Pay Act, a plaintiff must show that "'the employer paid employees of opposite genders different wages for equal work for jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions.'"  Hankinson, 2007 WL 4226389, at *1 (quoting Steger v. Gen. Elec. Co., 318 F.3d 1066, 1077-78 (11th Cir. 2003)); see also 29 U.S.C. § 206(d)(1).  Once a *prima facie*

- 21 -

case is established, it is the employer's burden to prove that the pay differential is justified by one of four exceptions: (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.  See Hankinson, 2007 WL 4226389, at *2.  Initially, Plaintiff fails to establish a *prima facie* case because, while she and Brown may have been making different wages, it was Plaintiff who was making the higher wage.  (Poulter Decl. ¶ 15.)  To the extent Plaintiff argues that Brown's receipt of a greater pay increase in 2005 was a violation of the Act, UPS submits that the differential in their percentage increases was "based on [a] factor other than sex" because it reflected the fact that Plaintiff was already at the top end of the pay scale for the position, while Brown was not.  (Id.)

3.    Plaintiff Cannot Establish that the Legitimate, Non-Discriminatory Reasons for Any of the Alleged Discriminatory Acts are Pretext for Race or Sex Discrimination.

In order to prove pretext, a plaintiff must present evidence "'sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'"  Hankinson, 2007 WL 4226389, at *3 (quoting Wascura v. City of S. Miami, 257 F.3d 1238, 1243 (11th Cir. 2001)).  The plaintiff must show that the reason was false and that discrimination was the true reason.  See Brooks v. County Comm'n, 446 F.3d 1160, 1163 (11th Cir. 2006).  Plaintiff has presented no evidence to rebut UPS's legitimate, non-discriminatory reasons for any of the alleged discriminatory acts, namely that others were more qualified and that UPS would have had to train two individuals as opposed to none if she had been moved into the positions.  See McCloud v. Potter, No. 07-12682, 2007 WL 4226373, at *2 (11th Cir. Dec. 3, 2007) (affirming summary judgment for employer where

- 22 -

plaintiff failed to rebut employer's legitimate, non-discriminatory reason for the employment

action taken); <u>Hankinson</u>, 2007 WL 4226389, at *3 (same).

C.    <u>Plaintiff Cannot Establish Her Retaliation Claim</u>.

Plaintiff claims that she was retaliated against after complaining about discrimination

when she was denied transfer to the job positions which she puts at issue in this case.[12]  (Pl's

Dep. 254.)  Specifically, Plaintiff alleges that Icenogle retaliated against her because she

complained to certain UPS managers about being overlooked for the above-described job

positions.[13]  (<u>Id</u>.)  A plaintiff establishes a *prima facie* case of retaliation by showing that (1) she

engaged in a statutorily protected activity; (2) she suffered an adverse employment act; and (3)

there is a causal connection between the protected expression and the adverse act.  See <u>Sullivan</u>

<u>v. Nat'l R.R. Passenger Corp.</u>, 170 F.3d 1056. 1059 (11th Cir. 1999); <u>see also</u> <u>Burlington N. &</u>

<u>Santa Fe Ry. Co. v. White</u>, 126 S. Ct. 2405, 2414-15 (2006).

1.    <u>Most of Plaintiff's Retaliation Claims Fail Because They are Barred by the</u>
      <u>Applicable Statute of Limitations</u>.

Plaintiff's retaliation claims should be dismissed, in part, because she failed to file her

EEOC charge within the requisite 180 days of some of the retaliatory actions she alleges.  Four

of the job positions she puts at issue were occupied more than 180 days before the filing of her

charge.  <u>See generally</u> <u>supra</u> Part II.B.  The only jobs at issue that were filled no earlier than 180

days before Plaintiff filed her charge are the November 2005 part-time package center supervisor

and June 2006 package car driver positions.  (<u>Id</u>.)

2.    <u>Plaintiff Cannot Establish a *Prima Facie* Case of Retaliation</u>.

Even if some of Plaintiff's claims are not time-barred, they should be dismissed because

---

[12]   The only form of retaliation Plaintiff alleges is the denial of the job positions described above.  (Pl's Dep. 254.)
[13]   Specifically, Plaintiff alleges that she complained to Tommy Davidson, Henry Hall, and Guy Redd about being overlooked for job transfers.  (Pl's Dep. 256-60.)

Plaintiff cannot establish a *prima facie* case of discrimination for any of them.  First, none of the actions taken by UPS were adverse employment actions.  To be adverse, the employment actions at issue must be "materially adverse" to Plaintiff.  See Burlington N., 126 S. Ct. at 2414-15.  As discussed in more detail above, none of the job changes Plaintiff allegedly sought were promotions.  These job changes would have been lateral transfers or demotions, at best.

Even if Plaintiff could establish that UPS's decisions not to transfer her to these positions were adverse employment actions, Plaintiff's claim for retaliation still fails because there is no evidence of any causal link between her alleged protected activity and UPS's decision not to transfer her into the job positions.  There is no evidence that Icenogle, the only individual that Plaintiff claims retaliated against her, (Pl's Dep. 256), was aware of her alleged protected conduct.  See Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (holding that plaintiff failed to present a *prima facie* case where he presented no evidence that the decision-maker was aware of his protected activity); Edmonson v. Bd. of Trustees of the Univ. of Ala., No. 07-11729, 2007 WL 4234549, at *3 (11th Cir. Dec. 4, 2007) (same).  To the extent that Plaintiff argues that temporal proximity between her protected activity and the alleged retaliatory acts is evidence of a causal link, Plaintiff's allegations in this regard are too vague to support such an argument.

Further, the only retaliatory conduct Plaintiff claims Icenogle took against her was to deny her the position transfers she desired.  (Pl's Dep. 254-55.)  The only job transfers at issue in this case that Icenogle could be alleged to have improperly denied Plaintiff given his departure from UPS in 2005 were the two OMS jobs filled by Blessman and Nelson.  See supra Note 7.  Plaintiff therefore fails to establish a causal link between the alleged protected activity and retaliatory conduct because it is impossible for Icenogle to have retaliated against her for

complaining about not getting the OMS positions *by denying her transfer to the very same positions*. This alleged retaliatory action had already occurred and was, in fact, the trigger for her protected activity.

Even crediting any arguments Plaintiff may make regarding causation, UPS has met its burden of producing legitimate, non-discriminatory reasons for its decisions not to transfer Plaintiff to the job positions about which she complains. <u>See</u> Section III.B.2.a. Plaintiff cannot show that any of those reasons are pretext for unlawful retaliation. (<u>See</u> Pl's Dep. 269.)

## IV. CONCLUSION

For the foregoing reasons, UPS respectfully requests that the Court grant its Motion and enter summary judgment in its favor on all of Plaintiff's claims asserted in this action.

Respectfully submitted this 21st day of December, 2007.

<u>s/ Jeremy D. Tucker</u>
Lisa H. Cassilly
Georgia Bar No. 116030
Jeremy D. Tucker (TUC037)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel. No. (404) 881-7000
Fax No. (404) 881-7777

William J. Baxley (BAX 001)
Donald R. James, Jr. (JAM016)
BAXLEY, DILLARD, DAUPHIN & McKNIGHT
2008 3rd Avenue South
Birmingham, Alabama 35233
Tel. No.: (205) 939-0995
Fax No.: (205) 271-1108

**Attorneys for Defendant**

LEGAL02/30613409v5

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

TRACY DEBOSE LAMPKIN,            )
                                 )
        Plaintiff                )
                                 )       CIVIL ACTION NO.
v.                               )       1:06-CV-538-WKW
                                 )
UNITED PARCEL SERVICE, INC.,     )
                                 )
        Defendant.               )
_____  )

## CERTIFICATE OF SERVICE

I certify that I have filed this date the foregoing DEFENDANT'S MEMORANDUM OF

LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT with the Clerk of Court

using the CM/ECF system, which will send electronic notification to:

> Crystal M. James
> Crystal James & Associates, LLC
> 8451 S. Cherokee Blvd., Suite F
> Douglasville, GA 30134
> jamesllc@bellsouth.net

This 21st day of December, 2007.

                                    s/ Jeremy D. Tucker
                                    Jeremy D. Tucker