IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

TRACY DEBOSE LAMPKIN,    )
    )
    Plaintiff    )
    )    CIVIL ACTION NO.
v.    )    1:06-CV-538-WKW
    )
UNITED PARCEL SERVICE, INC,  )
    )
    Defendant.    )
    )

## DECLARATION OF JEFF POULTER

I, Jeff Poulter, pursuant to 28 U.S.C. § 1746, hereby affirm that I am over 18 years of age and am competent to make the following Declaration:

1.

I am currently employed by UPS as the Human Resource Manager responsible for UPS's Alabama District. My responsibilities include oversight of personnel matters within the District and ensuring compliance with UPS policies pertaining to employment matters.

2.

The UPS Alabama District consists of the entire state of Alabama and a portion of the Florida panhandle. The Alabama district is further divided into package distribution "centers" and "hubs."

3.

I am familiar with the Plaintiff Tracy Lampkin and her claims of discriminatory treatment as asserted in this case. Ms. Lampkin currently is employed as a part-time supervisor at the UPS Center in Dothan, Alabama.

4.

It is my understanding that Ms. Lampkin alleges that she was wrongfully denied a transfer to a part-time operational management specialist ("OMS") position in Dothan on two occasions, once in July, 2003 and a second time in February, 2005. The OMS position at UPS no longer exists. Formerly, this position was a nonunion, hourly position which involved the performance of clerical and administrative duties. It was not a management position and did not involve the supervision of other personnel.

5.

The OMS positions about which Ms. Lampkin complains were filled by temporary employees, incumbents who were performing clerical and related duties immediately prior to their being placed in the job. More specifically, a part-time OMS position was filled at the Dothan Center in July, 2003 by Tammy Nelson and in February, 2005 a second part-time OMS position was filled by Angie Blessman. Both Ms. Nelson and Ms. Blessman initially worked at UPS as temporary workers pursuant to an agreement between UPS and a temporary personnel agency. From time to time, especially where it is not certain that a permanent position is

warranted, UPS makes use of temporary personnel who are supplied by employee leasing agencies. While employed by such a personnel agency, Ms. Nelson trained and worked at UPS performing a variety of office duties. Thereafter, effective July, 2003, she was hired by UPS to fill a permanent part-time OMS position performing many of the same job functions she previously was performing as a temporary worker. Similarly, Ms. Blessman began performing clerical duties at the Dothan Center before February, 2005 as a temporary worker provided by a personnel agency. UPS decided to make Ms. Blessman a permanent hire in February, 2005 at which time Ms. Blessman became an employee of UPS.

6.

There were legitimate, nondiscriminatory reasons for filling the OMS positions with Ms. Nelson and Ms. Blessman, rather than with Ms. Lampkin. As noted, before they were hired by UPS, Ms. Nelson and Ms. Blessman were already performing many of the clerical and administrative duties that comprised the OMS position pursuant to an employee leasing arrangement with a temporary personnel agency. Thus, they required little, if any, additional training. Further, by filling the newly added positions with Ms. Nelson and Ms. Blessman, rather than with Ms. Lampkin or another person who already was employed by UPS, UPS did not create a job vacancy. If UPS had placed Ms. Lampkin in the OMS position, her movement would have created a part-time supervisor vacancy at the Dothan Center

and UPS would have been required to identify and train a replacement for Ms. Lampkin. Finally, because the OMS position was not a management position and did not involve supervising other personnel, a move from a position as a part-time supervisor to a part-time OMS position would be viewed at UPS as a step back and UPS prefers not to move people in its organization backward. Indeed, Ms. Lampkin earned more than Ms. Nelson and more than Ms. Blessman after they became employed by UPS in the OMS position and Ms. Lampkin has been paid more than they have been paid at all times since they were hired.

7.

In recent years, the OMS position at UPS has been phased out. The duties of the former OMS position have been redistributed, with the majority of those duties now being performed by employees who are classified as part-time package center supervisors. The package center supervisor position is a new position which was introduced in the Alabama District the third quarter of 2005. The job requirements for the package center supervisor position are greater than those of the former OMS position and the position is also at a higher grade. The package center supervisor position is considered a management position and persons in the job are expected to be able to supervise other personnel.

8.

It is my understanding that Ms. Lampkin also complains in this case that she was not moved into a part-time package center supervisor position in November, 2005. The part-time package center supervisor position that was filled in Dothan in November, 2005 was filled by Jennifer Wesley. Before November, 2005, Ms. Wesley was working in Dothan as an hourly employee performing many of the clerical tasks that are part of the responsibilities of the new package center supervisor position, including operations clerk and data capture duties. Ms. Wesley had made UPS management aware of her desire to be promoted and also had taken steps to be qualified to be placed in a supervisory position at UPS.

9.

In September, 2005, Ms. Wesley successfully completed all of the components of the UPS Management Assessment and Promotion Process ("MAPP"). MAPP is a process of performance testing and assessment utilized to assist UPS in identifying and preparing people who have the knowledge, skills and abilities to meet current and future business needs.

10.

UPS has no record of Ms. Lampkin making known an interest in a move to a package center supervisor position. In any event, UPS had legitimate, nondiscriminatory reasons for filling the position with Ms. Wesley rather than with Ms. Lampkin. First, if UPS moved Ms. Lampkin into the part-time package center

supervisor position, it would not have been a promotion and, at best, would have constituted only a lateral move that would not have involved any increase in compensation or additional benefits of employment. The same was not true in Ms. Wesley's case since, for her, the part-time package center supervisor position represented an opportunity to advance. UPS has a long history of promoting from within and, whenever possible, UPS seeks to advance personnel based on their individual merit, performance and ability to qualify for a position. Ms. Wesley had expressed a desire to be promoted from her hourly position at UPS and the MAPP process she had earlier completed indicated that she was a good candidate for the package center supervisor position. Finally, if UPS moved Ms. Lampkin laterally from her existing part-time supervisor position on the local sort to the part-time package center supervisor position, then UPS would have been forced to train not only Ms. Lampkin to perform the duties of the package center supervisor job, but also would have been required to train a second person to perform the duties of the supervisor's position on the sort vacated by Ms. Lampkin. Conversely, by promoting Ms. Wesley who already had significant experience with many of the clerical and administrative duties which are part of the package center supervisor's role, UPS only needed to invest in training one person.

11.

I am aware that Ms. Lampkin further complains in this case that she has not been moved from the part-time supervisor's position on the local sort to a part-time position as a supervisor on preload. UPS has no record of her requesting such a move, but a transfer from supervising the local sort to preload is not considered a promotion or an advancement opportunity within UPS. At most, moving from supervising sort operations to supervising preload operations or vice versa is a lateral move. It would not involve an increase in compensation or greater benefits of employment. I myself met with Ms. Lampkin nearly a year ago and offered to make arrangements for her to be transferred to supervisor on the preload if that is what she desires. I told her all that was required was for her to confirm she wanted me to do so, but she did not accept my offer or and has not otherwise responded.

12.

I am aware that Ms. Lampkin also complains that she was not offered a package car driver position that was filled by Jason Jones in April, 2004 and a second package car driver position that was filled in June, 2006 by Ryan Brown. Package car drivers at UPS are hourly employees and their employment is covered by a collective bargaining agreement between UPS and the International Brotherhood of Teamsters. Moving from a supervisor's position to an hourly, bargaining unit position as a driver does not represent a promotion at UPS.

13.

Pursuant to the collective bargaining agreement between UPS and the Teamsters, the majority of all package car driver positions at UPS are filled by hourly personnel based on seniority and bidding rights. However, the collective bargaining agreement permits UPS to hire or place personnel who are not already subject to the agreement into a certain limited number of package car driver positions. When this occurs, District Human Resources, not Center management, makes the determination regarding who should be placed in the job.

14.

Before the commencement of this lawsuit, Human Resources had no information suggesting that Ms. Lampkin had an interest in leaving her job as a supervisor and becoming a package car driver. UPS follows a protocol for moving personnel into driving positions in those instances a position can be filled by someone outside of the bidding process. In order to be considered for such an opportunity, it is the responsibility of the employee who desires to be moved to a package car driver position to submit a Letter of Interest to UPS Human Resources. In this manner, Human Resources personnel are alerted to the employee's interest. Under UPS policy, a Letter of Interest expires at the end of the calendar year and, if an employee wishes to renew his or her expression of interest, he or she must resubmit a Letter of Interest the following year. The use of

Letters of Interest to alert Human Resources to a desire to be considered for such a position change has been long standing and is well known throughout the District. Information regarding submission of a Letter of Interest is made available to supervisory personnel like Ms. Lampkin on the UPS intranet. Ms. Lampkin has never submitted a Letter of Interest to UPS informing Human Resources that she wishes to be considered for a driving position. Mr. Jones and Mr. Brown, on the other hand, submitted Letters of Interest to Human Resources stating their desire to be considered for driving positions before they were placed in their respective driving jobs.

15.

Ms. Lampkin also complains in this case that she believes she has been paid unfairly in comparison to another employee. It is my understanding that Ms. Lampkin compares herself to employee Ryan Brown in connection with this claim and that she specifically complains regarding the difference in their pay during the years 2003 through 2005 while both she and Mr. Brown were working as part-time supervisors in Dothan. In truth, Ms. Lampkin was paid more than Mr. Brown in every year she and he were employed as part-time supervisors. In 2003, Mr. Brown earned $1,325 per month as a part-time supervisor while Ms. Lampkin earned $1700 per month. After each received a raise in 2004, Mr. Brown earned $1345 per month and Ms. Lampkin earned $1750 per month. Following raises

received in 2005, Mr. Brown earned $1440 per month and Ms. Lampkin earned $1800 per month. While he and she were both part-time supervisors, Mr. Brown received a greater percentage increase than Ms. Lampkin in one year only, the year 2005. The differential in the percentage increase they received was reflective of the fact that Ms. Lampkin was already at the top end of the pay scale for the position, while Mr. Brown was not.

16.

I am informed that many of Ms. Lampkin's allegations of unfair treatment concern Robert Icenogle, a former Center Manager employed by UPS. Mr. Icenogle retired from UPS in late 2005. Even before he retired, however, he ceased functioning as the Center Manager in Dothan. In preparation for Mr. Icenogle's retirement, UPS commenced transitioning his duties to other management personnel at the end of April 2005. Mr. Icenogle ceased managing the Dothan Center in May 2005, but continued working as a Center Manager with responsibility for a Center in Enterprise Alabama thereafter. In August 2005, he took an extended medical leave of absence and he did not return to managing the Dothan Center again before his retirement. As a consequence, Mr. Icenogle was not responsible for supervision of Ms. Lampkin or employment decisions at the Dothan Center after the beginning of May, 2005.

I declare under penalty of perjury that the foregoing is true and correct.

_Jeff Poulter_

**Jeff Poulter**

Executed on this 18 day of December, 2007.

John M. Clauss exp. 2-3-09

