| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974; see Privacy Act Statement on reverse before completing this form | | ENTER CHARGE NUMBER<br>[ X ] EEOC<br>130-2006-00783 |
|---|---|---|
| | | _____ and EEOC |
| (State or local Agency, if any) | | |

| NAME (Indicate Mr., Ms., or Mrs.)<br><br>Tracey Lampkin | | HOME TELEPHONE NO.<br>(Include Area Code)<br>334-691-7272 |
|---|---|---|
| STREET ADDRESS<br>165 Trapper Ridge | CITY, STATE AND ZIP<br>Cottonwood, AL 36320 | COUNTY<br>Houston |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME<br>United Parcel Service | NO. OF<br>EMPLOYEES/MEMBERS<br>Over 15 | TELEPHONE NO. (Include<br>Area Code)<br>334-794-3886 |
|---|---|---|
| STREET ADDRESS<br>4116 N. Montgomery Highway | CITY, STATE AND ZIP<br>Dothan, AL 36303 | COUNTY<br>Houston |
| NAME | | TELEPHONE NO. (Include<br>Area Code) |
| | RECEIVED<br>EEOC | |
| STREET ADDRESS | CITY, STATE AND ZIP<br>NOV 0 7 2005 | COUNTY |

| CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es):<br>[x] Race [x] Color [x] Sex [ ] Religion [ ] Age [ ] Disability BIRMINGHAM DISTRICT OFFICE<br><br>[ ] National Origin [x] Retaliation [ ] Other | DATE MOST RECENT OR<br>CONTINUING DISCRIMI-<br>NATION TOOK PLACE<br>(Month, day, year)<br>Continuous and Ongoing |
|---|---|

THE PARTICULARS ARE (If additional space is needed, attach extra sheet(s):

Social Security Number: __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__   Date of Birth: __5-24-70__   Sex: __Female__   Race: __African American__

    I, Tracey Lampkin, began working for United Parcel Service (UPS), in 1997 as a part time employee. In 2001, I was promoted to Local Sort, Part-Time Supervisor after passing the required management placement test. I worked for two different Center Managers and in 2002, Robert Icenogle became the third Center Manager at UPS. After Icenogle was hired, I began to suffer racial and sexual discrimination. I will not try to list everything, but will attempt to summarize the discrimination I have been and continued to be subjected to at UPS.

| [X] I also want this charge filed with the EEOC. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (When necessary to meet State and Local Requirements) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct.<br><br>11-03-05<br>Date   *Tracey Debose Lampkin*<br>Charging Party<br>(Signature) | SIGNATURE OF COMPLAINANT<br>*Tracey Debose Lampkin*  11-3-05<br>SUBSCRIBED AND SWORN TO BEFORE ME<br>THIS DATE *Angela D. Dykes*<br>(Day, month, and year) *My Commission*<br>*Expires 11-8-06* |

DEFENDANT'S EXHIBIT
2
AD-Bayonne, N.J.

Page 2 EEOC Charge
Name: Tracy Debose Lampkin
Social Security #: 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
Date: 11-3-05

RECEIVED
EEOC     BO-2006-00283

NOV 0 7 2005

BIRMINGHAM DISTRICT OFFICE

Since 2003, I have requested several different positions within the company; however, I have been overlooked and/or denied the positions because of my race. I have applied for two Pre-Load Supervisor's positions, and three Operational Management Services (OMS) positions. All of these positions have been filled by white employees, most of whom were not required to take the management placement test. Additionally, I have more seniority than any of the white employees who were given the positions over me.

During the summer of 2003, Icenogle promised me an OMS position, but did not follow through. Instead, when the position was to be filled, he told me that there was a hold on hiring supervisors. I called the District Manager's office, and asked about the hold on hiring. I was informed that there was no hold. Icenogle placed a white female in the position. I was as qualified or more qualified than the white female.

A Pre-Load Supervisor position also became available sometime in 2003. I applied, but Icenogle would not consider me for the position. The position was filled by a white male, who was not required to take the management placement test. Icenogle informed me that I was going to stay on Local Sort.

Another Pre-Load Supervisor's position became available around February 2004, and I applied for the position. Again, Icenogle would not consider me for the position and told me that I was going to stay on Local Sort because that was what I knew. I tried to explain that I wanted to learn more about the company so that I could advance; however, because of my race, he refused to consider me for the position. A white male was given the position, and again, this white employee was not required to take the management placement test.

A second OMS position became available in May 2005. Icenogle approached me and told me that he knew I wanted the position. When I confirmed that I did, he informed me that it was his Center and he would put me where he wanted me to be. Further, despite previously telling all of the supervisors that we were equals, he tried to discourage me from wanting this position by telling me that it would be a demotion and cut in pay. It is my understanding that this is not true. A white female was given the position although she was only a temporary employee and had only been with the company for a little over a year. She was not required to take the management placement test and has stated that she would have probably failed the test if she had been required to take it. I was more qualified for the position than the white female. Additionally, this same employee was hired through a temporary agency directly into an OMS position without taking the Management test. I had inquired about this OMS position before the white female was hired, but was not given the position.

A third OMS position became available in July 2005, and I applied for it. Another African American female also applied for the position. The position has been given to a white female that worked under my supervision. I am more qualified than the white female who is going to have to be trained to do the job. I would not have required training for the position. The white female was given the position even though the new Center Manager was well aware that I had asked for the position. He approached me when the position first became available and told me that he knew about the problems I had been having and that he knew I was interested in the position. Further, before the position was filled, the other black female had been acting as the OMS and will still be required to cover the position should the white female call in sick or otherwise not report to work. Again, as a deterrent, I was told the position would be a demotion. This could not be true if the supervisor positions are equal as Icenogle had told us before.

I did complain to a black full time supervisor several times. I told him that I felt Icenogle was prejudiced towards the black employees. This supervisor agreed that I was not getting the positions because of the color of my skin. It is also my understanding that Icenogle treated the black drivers differently than the white drivers. He continuously nagged them about issues that he did not address with the white drivers. It is my understanding that the black drivers filed discrimination charges against Icenogle, but UPS did not take action to address their complaints.

Page 3 EEOC Charge
Name: Tracy Debose Lamplin
Social Security #: 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
Date: 11-3-05

130-2006.00983

I have also suffered discrimination in pay due to both my race and sex. Ryan Brown, a white male, was hired in February 2003, and was quickly promoted to a supervisory position equal to mine. In the past two years, Brown has been given higher raises than me. In 2004, my raise for the year was less than Brown's despite my having a better job performance than Brown. This year, Brown and I are working in the same department and again, his raise was considerably higher than mine.

I have also suffered and continue to suffer discrimination in regards to discipline. I have been and continue to be forced to write myself up for the same or substantially the same errors the white supervisors make; however, the white supervisors are not required to write themselves up. I have, on several occasions, been required to do a write up on myself even when I was out of work on vacation or off for the day and was not responsible for the errors. On one occasion, I had to write myself up when I knew there was going to be a problem and called Icenogle ahead of time to let him know there was going to be a problem. Instead of helping me deal with the problem, he let the error occur and then instructed me to do a write up. Around May 2005, Icenogle tried to suspend me following a problem with the SCS machine, but could not justify the suspension. The two white supervisors working on the SCS machine with me were not threatened with suspension, instead the entire incident was blamed on me. I believe that Icenogle was trying to get me fired and that if I had been suspended, I would have been fired.

Sometime in June, Icenogle was moved to another department. While he was my supervisor, I was scared to report Icenogle's discrimination because he had informed us that he could and would get rid of anyone that he wanted out. Since Icenogle's transfer, I have complained to Human Resources and told them that I felt I had been discriminated against. Nothing has been done to remedy the discrimination I have suffered and continue to suffer.

Upon information and belief, it is my understanding that other black employees at United Parcel Services have been racially discriminated against and have complained about the racial discrimination and harassment.

I believe that I have suffered and continue to suffer from racial discrimination, sexual discrimination and retaliation while employed with United Parcel Services, and that I was and continue to be discriminated against because of my race, black and sex, female. I have been discriminated against because of my race and sex in job assignments, training, promotions, wages, discipline, discharge, and other terms, conditions, and privileges of employment; and retaliated against in that the conduct was wilful, malicious, and in wanton disregard of my federally protected rights. Moreover, I believe that UPS has engaged in a pattern and practice of race discrimination against myself and other African Americans. I believe, further, that UPS applied facially neutral job provisions in a way that has a disparate impact on African Americans. I believe that African Americans are discriminated against as a class in job assignments, training, promotions, wages, discipline, discharge, and other terms, conditions, and privileges of employment.

Tracy Debose Lamplin
Charging Party

11-3-05
Date

RECEIVED
EEOC

NOV 0 7 2005

BIRMINGHAM DISTRICT O...

*Enclosure with EEOC*
*Form 131 (5/01)*

## INFORMATION ON CHARGES OF DISCRIMINATION

### EEOC RULES AND REGULATIONS

Section 1601.15 of EEOC's regulations provides that persons or organizations charged with employment discrimination may submit a statement of position or evidence regarding the issues covered by this charge.

EEOC's recordkeeping and reporting requirements are found at Title 29, Code of Federal Regulations (29 CFR): 29 CFR Part 1602 (see particularly Sec. 1602.14 below) for Title VII and the ADA; 29 CFR Part 1620 for the EPA; and 29 CFR Part 1627, for the ADEA. These regulations generally require respondents to preserve payroll and personnel records relevant to a charge of discrimination until disposition of the charge or litigation relating to the charge. (For ADEA charges, this notice is the written requirement described in Part 1627, Sec. 1627.3(b)(3), .4(a)(2) or .5(c), for respondents to preserve records relevant to the charge – the records to be retained, and for how long, are as described in Sec. 1602.14, as set out below). Parts 1602, 1620 and 1627 also prescribe record retention periods – generally, three years for basic payroll records and one year for personnel records. Questions about retention periods and the types of records to be retained should be resolved by referring to the regulations.

**Section 1602.14  Preservation of records made or kept.** . . . . Where a charge ... has been filed, or an action brought by the Commission or the Attorney General, against an employer under Title VII or the ADA, the respondent ... shall preserve all personnel records relevant to the charge or the action until final disposition of the charge or action. The term *personnel records relevant to the charge,* for example, would include personnel or employment records relating to the aggrieved person and to all other aggrieved employees holding positions similar to that held or sought by the aggrieved person and application forms or test papers completed by an unsuccessful applicant and by all other candidates or the same position as that for which the aggrieved person applied and was rejected. The date of *final disposition of the charge or the action* means the date of expiration of the statutory period within which the aggrieved person may bring [a lawsuit] or, where an action is brought against an employer either by the aggrieved person, the Commission, or the Attorney General, the date on which such litigation is terminated.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA provide that it is an unlawful employment practice for an employer to discriminate against present or former employees or job applicants, for an employment agency to discriminate against any individual, or for a union to discriminate against its members or applicants for membership, because they have opposed any practice made an unlawful employment practice by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the statutes. The Equal Pay Act contains similar provisions. Additionally, Section 503(b) of the ADA prohibits coercion, intimidation, threats, or interference with anyone because they have exercised or enjoyed, or aided or encouraged others in their exercise or enjoyment, of rights under the Act.

Persons filing charges of discrimination are advised of these Non-Retaliation Requirements and are instructed to notify EEOC if any attempt at retaliation is made. Please note that the Civil Rights Act of 1991 provides substantial additional monetary provisions to remedy instances of retaliation or other discrimination, including, for example, to remedy the emotional harm caused by on-the-job harassment.

### NOTICE REGARDING REPRESENTATION BY ATTORNEYS

Although you do not have to be represented by an attorney while we handle this charge, you have a right, and may wish to retain an attorney to represent you. If you do retain an attorney, please give us your attorney's name, address and phone number, and ask your attorney to write us confirming such representation.