IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TRACY DEBOSE LAMPKIN, ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 1:06-CV-538-WKW |
| ) | |
| UNITED PARCEL SERVICE, INC, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

UPS demonstrated in its initial summary judgment brief that the majority of Plaintiff's discrimination and retaliation claims are clearly time-barred and that, even if considered, these and Plaintiff's remaining claims fail because Plaintiff cannot establish a *prima facie* case or show that UPS's legitimate, non-discriminatory and non-retaliatory reasons for its decisions were pretextual. In her response, Plaintiff does not dispute any material facts set out by UPS, nor does she challenge the well-settled law that supports UPS's motion. Instead, Plaintiff offers a host of incorrect, unsupported, and irrelevant arguments. Accordingly, UPS respectfully requests that its Motion for Summary Judgment be granted.

**II.   ARGUMENT AND CITATION TO AUTHORITY**

**A.   Plaintiff's Allegations of Discrimination and Retaliation under Title VII**

    **1.   Most of Plaintiff's Claims are Time-Barred.**

Plaintiff's claims based on allegations of discrimination and retaliation all arise under Title VII of the Civil Rights Act of 1964 ("Title VII"). As UPS submitted in its initial

Memorandum in Support of its Motion for Summary Judgment, most must be dismissed because Plaintiff failed to file a charge with the EEOC within the requisite one hundred eighty (180) days of the alleged adverse employment actions.  (UPS's Memorandum of Law in Support of Its Motion for Summary Judgment ("Summ. J. Br.") at 13-14, 23.)  Significantly, Plaintiff does not dispute that she failed to file a charge within 180 days of most events about which she complains, nor does she dispute that the law dictates that failure to timely file is a bar to proceeding on a Title VII claim.  (Plaintiff's Response in Opposition to UPS's Motion for Summary Judgment ("Pl's Resp.") at 7-8.)  Rather, Plaintiff asks that the Court excuse her failure to file within the 180-day period because she alleges she made *internal* complaints to UPS management, presumably close in time to the events at issue.  (Id.)  Assuming that Plaintiff promptly complained of alleged discrimination internally, a matter UPS does not concede, it is well settled that a plaintiff still must file a timely charge of discrimination with the EEOC in order to preserve her rights under Title VII.  See 42 U.S.C. § 2000e-5(e)(1); Pijnenburg v. W. Ga. Health Sys., Inc., 255 F.3d 1304, 1305 (11th Cir. 2001) ("in order to obtain judicial consideration of such a claim, a plaintiff must first file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred").  If a party fails to comply with this charge-filing requirement, she cannot assert a Title VII claim in court.  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101., 109 (2002) ("A claim is time barred if it is not filed within [the 180- or 300-day] time limits"); Cooper v. S. Co., 390 F.3d 695, 732 n. 22 (11th Cir. 2004).[1]

---

[1] Plaintiff cites to Johnson v. Booker T. Washington Broadcasting Serv. Inc., 234 F.3d 501 (11th Cir. 2000) for the proposition that making internal complaints equates to filing a charge with the EEOC.  To the extent Plaintiff attempts to argue this point, she misrepresents the holding of Johnson.  In that case, the court held only that a plaintiff's complaints to her superiors are considered protected expression for purposes of a retaliation claim.

Plaintiff admits that she did not file a charge with the EEOC until November 3, 2005 (Pl's Dep. 104.)  Each of the following alleged events occurred more than 180 days before that date and, thus, any claim by Plaintiff for alleged discrimination or retaliation which is premised on these alleged events is time-barred as a matter of law:

(1) Plaintiff's non-selection for a part-time Operational Management Specialist (OMS) position in July 2003 (Id. at 128);

(2) Plaintiff's allegation that Robert Icenogle, the Center Manager, yelled at her during an exchange in 2003 regarding late deliveries at the Dothan Center (Id. at 247-48);

(3) Plaintiff's non-selection for an alleged vacancy she claims was created by Ryan Brown's move from the a.m. shift to the p.m. shift as a part-time supervisor over local sort in early 2004 (Id. at 138);

(4) Plaintiff's allegation that she received a lesser percentage salary increase than Ryan Brown in 2004 (Id. at 220);

(5) Plaintiff's non-selection for a package car driver position in April 2004 (Id. at 142);

(6) Plaintiff's allegation that Robert Icenogle was harsh with her in or around February 2005 when she asked about moving to an OMS position and he responded with "strongness" that taking the position might mean a pay cut for her (Id. at 248-50); and

(7) Plaintiff's non-selection for a part-time OMS position filled by Angie Blessman in February 2005 (Id. at 152).[2]

**2. UPS is Entitled to Summary Judgment on the Merits on Plaintiff's Failure to Promote Claims.**

Not only are most of Plaintiff's promotion claims time-barred, Plaintiff's failure to promote claims fail because she cannot establish a *prima facie* case of discrimination or demonstrate that UPS's legitimate, non-discriminatory reasons for its decisions were a pretext

---

[2] The truth that her claims are largely time-barred is underscored by the fact that the only person Plaintiff accuses of discrimination or retaliation is Robert Icenogle, former Center Manager at the Dothan Center.  Icenogle ceased managing that Center in mid-summer 2005 (Poulter Decl. ¶ 16.)  Accordingly, Plaintiff's allegations of discrimination and retaliation necessarily are limited to events occurring before mid-summer 2005.

for discrimination. Plaintiff's opposition to the pending Motion for Summary Judgment identifies only three alleged promotional opportunities Plaintiff claims she was improperly denied. First, Plaintiff asserts that she should have been given the OMS position that was filled by Tammy Nelson in July 2003. (Pl's Dep. 128.) Second, Plaintiff claims she should have been offered the OMS position that was filled by Angie Blessman in February 2005. (Id. at 152.) Finally, Plaintiff argues that she was wrongly denied a transfer to a part-time preload position on the p.m. shift she believes became available when Ryan Brown transferred in early 2004 from that shift to her shift. (Id. at 138.)[3]

i.  *July 2003 and February 2005 OMS Positions*

As UPS set out in its initial summary judgment brief, Plaintiff cannot establish a *prima facie* case arising from the selection decisions for the OMS positions for several independent reasons. First, a move into an OMS position would not have represented a promotional opportunity for Plaintiff. (Poulter Decl. ¶ 6.) Rather, a move from part-time supervisor to OMS would have been viewed as a professional step backward. (Id.) Unlike the part-time supervisor position Plaintiff already occupied, the OMS position was not a management position and did not involve supervising other personnel. (Id.) Indeed, Plaintiff earned substantially more than Nelson and Blessman, the two employees who filled the OMS positions, after they became employed in those positions and, in fact, Plaintiff has been paid more than them at all times since they were hired. (Id.)

Moreover, UPS had a legitimate, non-discriminatory reason for filling the OMS openings with Nelson and Blessman. Before Nelson and Blessman were hired by UPS, they were already

---

[3] As discussed hereinbelow in Section II.B., Plaintiff has abandoned her discrimination and retaliation claims allegedly arising from the other job transfers discussed in UPS's Memorandum of Law in Support of Its Motion for Summary Judgment. Plaintiff's opposition to UPS's Motion for Summary Judgment on her failure to promote claims is limited to these three positions.

- 3 -

performing many of the duties that comprised the OMS position as temporary workers. (Pl's Dep. 131-32, 138, 173; Poulter Decl. ¶ 6.) Nelson and Blessman were simply converted to UPS employees and continued to perform the same OMS tasks they performed as leased employees. Plaintiff admits that Nelson's job functions did not change when Nelson moved to OMS. (Pl's Dep. 131-32.) Similarly, she admits that Blessman was trained in OMS functions before she moved to OMS. (Id. at 173.) See Harrington v. Disney Reg'l Entm't, Inc., No. 06-12226, 2007 WL 3036873, at *10 (11th Cir. Oct. 19, 2007) (holding that defendant had a legitimate, non-discriminatory reason for promoting an alleged comparator where comparator had previous experience doing the job at issue and plaintiffs did not); Walker v. Prudential Prop. & Cas. Ins. Co., 286 F.3d 1270, 1278 (11th Cir. 2002) (holding that employer had a legitimate, non-discriminatory reason for promoting an alleged comparator where comparator had experience and training in the position).

 Further, UPS avoided disruption to its operations and additional investment of time and resources by filling the OMS jobs with Nelson and Blessman. If Plaintiff had been moved into the OMS position rather than Nelson or Blessman, UPS would have been forced to train Plaintiff to perform the full range of tasks associated with the OMS position, and also another employee to assume Plaintiff's duties in the part time supervisor position she vacated. (Poulter Decl. ¶ 10.) This legitimate, nondiscriminatory explanation offered by UPS for its decisions has not even been challenged by Plaintiff. See Williams v. St. Joan of Arc Church, 226 F. App'x 180, 188 (3d Cir. 2007) (holding that the employer had a legitimate, non-discriminatory reason where it acted out of economic and efficiency concerns); Aviles v. Cornell Forge Co., 183 F.3d 598, 604 (7th Cir. 1999) (holding that the employer had a legitimate, non-discriminatory reason where its

actions saved money for the company); May v. Shuttle, Inc., 129 F.3d 165, 173 (D.C. Cir. 1997) (holding same).

        ii.        *2004 Part-time Supervisor Position in Preload*

Plaintiff's opposition to UPS's Motion for Summary Judgment also fails to establish a *prima facie* case of discrimination arising from her complaint that she was not transferred to a part-time supervisor position on the preload during the a.m. shift when Ryan Brown was moved to her p.m. shift. As a threshold matter, the evidence is uncontroverted that there was no vacancy for a part time supervisor position on the a.m. shift created by Brown's move to the p.m. shift. Brown was moved to the p.m. shift to oversee sorting operations with Plaintiff as a part time supervisor because a *full-time* supervisor was reassigned at that time to the a.m. shift and the duties that Brown had been performing previously on the a.m. shift were assumed by that full- time supervisor, together with his other duties. (Declaration of Ryan Brown ¶ 2.) Plaintiff's claim arising from this alleged lost opportunity is also due to be dismissed because, even had a part-time supervisor position existed, it would not represent a promotion to move Plaintiff into the job. It is undisputed that transferring from supervising sort operations at UPS to supervising preload operations, or vice versa, is merely a lateral move. (Poulter Decl. ¶ 11.) See Alvarado v. Tex. Rangers, 492 F.3d 605, 612 (5th Cir. 2007) ("It is well established that the denial of a purely lateral transfer is not an adverse employment action redressable under Title VII."); Reese v. State of Mich. Family Independence Agency, 31 F. App'x 172, 173 (6th Cir. 2002) (holding that "the denial of a request for a lateral transfer is not an adverse employment action for the purposes of Title VII"); Sanchez, 164 F.3d at 532 n.6 (10th Cir. 1998) ("If a transfer is truly lateral and involves no significant changes in an employee's conditions of

LEGAL02/30690216v3

employment, the fact that the employee views the transfer either positively or negatively does not of itself render the denial or receipt of the transfer adverse employment action.").

> 3. **UPS is Entitled to Summary Judgment on the Merits on Plaintiff's Disparate Pay Claims.**

As UPS set out in its initial summary judgment brief, Plaintiff also fails to establish her *prima facie* case of disparate pay because, in truth, she was paid more than her alleged comparator, Ryan Brown, in every year she and he were employed as part-time supervisors. (Poulter Decl. ¶ 15.) To the extent Plaintiff asserts that Brown's receipt of a greater percentage pay increase in 2005[4] was discriminatory, UPS has offered a legitimate, non-discriminatory reason for the differential in percentage increase that Plaintiff does not attempt to rebut. Brown received a slightly higher percentage pay increase in 2005, while still earning less than Plaintiff, because Plaintiff was already at the top end of the pay scale for the position, while Brown was not. (Poulter Decl. ¶ 15.) Nowhere in Plaintiff's response brief does she even address this undisputed fact, let alone make an effort to show that the legitimate, non-discriminatory explanation which has been offered by UPS is pretextual. Accordingly, UPS is entitled to summary judgment on this claim.

> 4. **UPS is Entitled to Summary Judgment on the Merits on Plaintiff's Retaliation Claims.**

Plaintiff's retaliation claims fail not only because they are time-barred, but also because she cannot establish a *prima facie* case of retaliation or demonstrate that UPS's legitimate, non-retaliatory reasons for its decisions were a pretext for retaliation. First, the employment actions alleged to have taken place were not adverse employment actions. To be adverse, the employment actions at issue must be "materially adverse" to Plaintiff. See Burlington N. &

---

[4] In 2005, Brown received a greater percentage increase than Plaintiff, but Plaintiff was earning $1,800 while Brown was only earning $1,440. (Poulter Decl. ¶ 15.)

Santa Fe Ry. Co. v. White, 126 S. Ct. 2405, 2414-15 (2006). As discussed in more detail above and in UPS's initial summary judgment brief, none of the job changes Plaintiff allegedly sought were promotions. These job changes would have been lateral transfers or demotions, at best. The only other bases for her claim for retaliation identified by Plaintiff is her assertion that Icenogle spoke harshly or "strongly" to her and her assertions of disparate pay discussed above. (Pl's Resp. 15.)

Plaintiff's complaints regarding the manner in which Icenogle spoke to her are vague and unsupported by record evidence other than her own unclear testimony. (Pl's Dep. 241-42, 246, 248, 251.) Further, none of her allegations in this regard are tied to any alleged serious and material change in the terms or conditions of her employment. It is undisputed that Plaintiff was never demoted, suspended or otherwise disciplined by Icenogle and any write ups which were done in connection with her job performance were write ups prepared by the Plaintiff herself. (Id. 241, 253.).

Even if Plaintiff could establish that she was subjected to an adverse action based on the way Icenogle spoke to her or the one time she received a smaller percentage salary increase than Ryan Brown, her claims for retaliation still fail because there is no evidence of any causal link between her alleged protected activity and the alleged retaliatory acts.[5] Plaintiff identifies three UPS employees to whom she allegedly complained about discrimination, but none of these individuals is accused of retaliating against her and there is no evidence that the only person accused of retaliation, Icenogle, had knowledge of the purported complaints. (Pl's Dep. 260-68.) See Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (holding that plaintiff failed to present a *prima facie* case where he presented no evidence that the decision-maker was aware of

---

[5] See Summ. J. Br. at 24-25 for discussion regarding why Plaintiff cannot establish a causal link between her internal complaints and her non-selection for the jobs she desired.

- 7 -

his protected activity); Edmonson v. Bd. of Trustees of the Univ. of Ala., No. 07-11729, 2007 WL 4234549, at *3 (11th Cir. Dec. 4, 2007) (same).

**B.     Plaintiff Has Abandoned Some of Her Claims.**

Plaintiff's response to UPS's Motion for Summary Judgment fails to address three claims she had initially put at issue in this case.  Plaintiff completely ignores the Motion and material facts cited by UPS relating to the following Plaintiff's claims:

1) Plaintiff's allegations relating to an opportunity to move from her supervisor's position to a package car driver position;

2) Plaintiff's allegation that she was subjected to disparate discipline;[6]

3) Plaintiff's claim for a violation of the Equal Pay Act.

It is the Plaintiff's burden to demonstrate that there is a genuine issue for trial regarding these claims.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 325 (1986) (holding that once the moving party satisfies its initial burden to show an absence of evidence to support the nonmoving party's case, the burden shifts to the non-moving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").  By failing to make any response to the material facts and argument presented by UPS in support of its Motion on these claims, Plaintiff has conceded that she is abandoning the claims and summary judgment for UPS is proper.  Hudson v. Norfolk So. Ry. Co., 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned."); Slugocki v. United States, 988 F. Supp. 1443, 1447 (S.D. Fla. 1997) (where plaintiff failed to

---

[6] Like many of her claims, Plaintiff's claim for disparate discipline was never precise.  Plaintiff never even indicated whether it was a claim based on gender, or one based on race.

- 8 -

address defendant's summary judgment arguments as to the essential elements of plaintiff's claims, court deemed plaintiff to have conceded such arguments).

### III. CONCLUSION

For the reasons stated herein, and in its initial brief, UPS respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's Complaint in its entirety, with prejudice.

Respectfully submitted this 15th day of February, 2008.

s/ Jeremy D. Tucker
Lisa H. Cassilly
Georgia Bar No. 116030
Jeremy D. Tucker (TUC037)
ALSTON & BIRD LLP
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
Tel. No. (404) 881-7000
Fax No. (404) 881-7777

William J. Baxley (BAX 001)
Donald R. James, Jr. (JAM016)
BAXLEY, DILLARD, DAUPHIN & McKNIGHT
2008 3rd Avenue South
Birmingham, Alabama 35233
Tel. No.: (205) 939-0995
Fax No.: (205) 271-1108

**Attorneys for Defendant**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TRACY DEBOSE LAMPKIN, ) | |
| ) | |
| Plaintiff ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 1:06-CV-538-WKW |
| ) | |
| UNITED PARCEL SERVICE, INC., ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## CERTIFICATE OF SERVICE

I certify that I have filed this date the foregoing DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT with the Clerk of Court using the CM/ECF system, which will send electronic notification to:

    Crystal M. James
    Crystal James & Associates, LLC
    8451 S. Cherokee Blvd., Suite F
    Douglasville, GA 30134
    jamesllc@bellsouth.net

This 15th day of February, 2008.

                                            s/ Jeremy D. Tucker
                                            Lisa H. Cassilly