IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| TRACY DEBOSE LAMPKIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:06-cv-0538-WKW [wo] |
| | ) | |
| UNITED PARCEL SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This cause is before the court on the defendant's Motion for Summary Judgment (Doc. # 62). Tracy Debose Lampkin ("Lampkin"), a black female employed by United Parcel Service ("UPS"), brings claims of race and sex discrimination under Title VII of the Civil Rights Act of 1964 against UPS for retaliation and failing to promote her, (Am. Compl. ¶¶ 19-30), and a claim under the Equal Pay Act. (*Id.* ¶¶ 31-34.) For the reasons set forth below, the defendant's summary judgment motion is due to be granted.

**I. FACTS AND PROCEDURAL HISTORY**

Lampkin is currently employed by UPS as a part-time supervisor in the company's Alabama Package Center in Dothan, Alabama. (Pl.'s Resp. Br. 2; Def.'s Mot. Summ. J. Br. 2.) She first starting working there in 1997 as an hourly, unionized worker in the local sort operations and was promoted to her current position in 2001. (Def.'s Mot. Summ. J. Br. 2.) Local sort operations involve the sorting and moving out of packages to incoming drivers. (Def.'s Mot. Summ. J. Br. 2.) She is now a salaried, non-union employee. (*Id.*) During her

time in this position, she claims that white and male co-workers have been promoted over her unlawfully and that a similarly situated white male has been paid more than she.

Lampkin identifies four positions to which she alleges she was discriminatorily denied promotions: (1) operational management specialist ("OMS"), (2) part-time package center supervisor, (3) part-time supervisor assigned to cover preload operations, and (4) a package car driver. (*Id.*) Although the OMS position no longer exists, it was a "nonunion, hourly position which involved the performance of clerical and administrative duties." (*Id.* at 3.) The OMS position was not a management position and did not involve the supervision of other personnel. (*Id.*) The part-time package center supervisor position now encompasses many of the duties once performed by the OMS position, but it is considered to have greater job requirements, to be a management position, and to enjoy a higher pay grade than the former OMS position. (*Id.* at 3-4.) The part-time supervisor position to cover preload operations has the same level of compensation and benefits as Lampkin's current position. (*Id.* at 7.) Package car drivers are hourly employees, and their employment is covered by a collective bargaining agreement between UPS and the International Brotherhood of Teamsters. (*Id.*) The relevant dates of the alleged instances in which she was not promoted are provided in the timeline summary below.

Lampkin also alleges that she received lower pay than a similarly situated white male employee, Ryan Brown ("Brown"), in 2004 and 2005. In 2004, Brown received a $70 per month pay raise that increased his monthly salary to $1,345. (Doc. # 62-4, at 98.) In the

same year, Lampkin received a $50 per month pay raise that increased her monthly salary to $1,750. (Poulter Decl. ¶ 15; Lampkin Dep. 226:24-227:3.) In 2005, Brown received a $98 per month pay raise that increased his monthly salary to $1,440,[1] while Lampkin received another $50 per month pay raise that increased her monthly salary to $1,800. (Poulter Decl. ¶ 15; Lampkin Dep. 227:7-16.) Lampkin acknowledges that she earned more per month than Brown in both 2004 and 2005. (Lampkin Dep. 227:4-23.)

Lampkin filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 7, 2005. (Doc. # 62-4, at 81-84.) She filed her complaint (Doc. # 1) with this court on June 16, 2006. The complaint contains three causes of action: failure to promote, retaliation, and a violation of the Equal Pay Act. (Compl. ¶¶ 19-34.) The defendant filed its summary judgment motion (Doc. # 62) on December 21, 2007, to which Lampkin responded (Doc. # 66), and the defendant replied (Doc. # 70).

To summarize, the timeline of the alleged events which form the basis of Lampkin's discrimination claims is as follows:

1. July 2003: Lampkin's non-selection for a part-time OMS position (Lampkin Dep. 128:14-131:5);

2. 2003: Lampkin's supervisor, Robert Icenogle ("Icenogle"), yelled at her and another employee in his office during an exchange regarding late deliveries, (*id.* at 247:4-248:14);

---

[1] Although the salary information provided by UPS indicates his raise may have been $95 per month, the difference is immaterial to the analysis.

3. Early 2004: Lampkin's non-selection for a part-time preload supervisor position allegedly created by Brown's move from the morning to afternoon shift, (*id.* at 138:21-140:19);

4. 2004: Lampkin received a lesser percentage salary increase than Brown, (*id.* at 220:6-221:4);

5. April 2004: Lampkin's non-selection for a full-time package car driver position that went to Jason Jones, (*id.* at 142:15-145:12);

6. February 2005: Icenogle was harsh with Lampkin when responding to her question about moving to an OMS position, (*id.* at 248:15-251:6);

7. February 2005: Lampkin's non-selection for a part-time OMS position, (*id.* at 152:11-22);

8. 2005: Lampkin received a lesser percentage salary increase than Brown, (*id.* at 221:5-7);

9. November 7, 2005: Lampkin filed her EEOC charge of discrimination, (Doc. # 62-4, at 81-84);

10. March 16, 2006: EEOC concluded its investigation, (Doc. # 1-2, at 1-2);

11. April 10, 2006: EEOC issued Lampkin a right to sue letter after being unable to determine there was a violation of Title VII, (*id.* at 6);

12. June 2006: Lampkin's non-selection for a package car driver position

that went to Ryan Brown, (Lampkin Dep. 211:8-12; Brown Decl. ¶ 3).

## II. JURISDICTION AND VENUE

Because this case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The parties do not contest personal jurisdiction or venue, and the court finds adequate allegations supporting both.

## III. STANDARD OF REVIEW

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995). The movant can meet this burden by presenting evidence showing there is no genuine issue of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex Corp.*, 477 U.S. at 322-23.

Once the moving party has met its burden, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine factual dispute exists if a "'reasonable jury could return a verdict for the non-moving party.'" *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)). After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## IV. DISCUSSION

### A.   *Title VII Claims*

The plaintiff claims she was passed over for four employment positions at UPS for unlawfully discriminatory reasons and was subject to unlawful retaliation as a result of her internal complaints.[2] However, all of her claims under Title VII are

---

[2] Although the plaintiff's complaint uses the phrase "hostile work environment," (Am. Compl. ¶ 28), it is only in the context of a form of retaliation and was not brought as a separate hostile work environment claim.

either time-barred or procedurally flawed. In Alabama, unlawful employment practices must be complained of in a charge of discrimination filed with the EEOC within 180 days after the alleged unlawful practice occurred. *Ledbetter v. Goodyear Tire & Rubber Co.*, __ U.S. __, 127 S. Ct. 2162, 2169 (2007). Failure to promote and retaliation are discrete acts, and a timely EEOC charge must be filed with respect to each alleged violation. *Id.* at 2175; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Lampkin filed her EEOC charge on November 7, 2005; therefore, any alleged failure to promote or retaliation that occurred prior to May 11, 2005, is outside the charging period and cannot provide a basis for holding her employer liable under Title VII.[3]  *See Ledbetter*, 127 S. Ct. at 2172.

As illustrated in the timeline above, none of the alleged violations of Title VII for failure to promote or for retaliation occurred during the charging period between May 11, 2005, and November 7, 2005. All of the actions occurred before May 11, 2005, except the alleged failure to promote Lampkin to a package car driver position in June 2006. The failure to specifically articulate a claim in an EEOC charge is not necessarily fatal, however. A Title VII action may be based "'upon any kind of discrimination like or related to the charges's allegations, limited only by the scope

---

[3] It is also clear from the face of her EEOC complaint, (Doc. # 1-2, 3-5), that Lampkin learned of being passed over for the positions, or should have learned, contemporaneously to the time the positions were filled by someone else. *See Nelson v. U.S. Steel Corp.*, 709 F.2d 675, 677 n.3 (11th Cir. 1983) ("The 180 day time period begins to run only when the complainant first learns or should have learned of the alleged discrimination.").

of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination.'" *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000) (quoting *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993)). Lampkin's charge already complained of a failure to promote her to other positions at UPS. However, even assuming the June 2006 failure to promote is "like or related to the charge's allegations" regarding the other alleged instances of failing to promote her, the EEOC investigatory scope could not possibly have encompassed the June 2006 incident because it had not yet occurred. Therefore, the initial charge of discrimination does not cover the June 2006 failure to promote, and a new charge of discrimination was required for this discrete, unlawful employment practice.

Because there has not been an EEOC charge filed for the alleged June 2006 failure to promote, her initial charge has not been amended, and the EEOC has not had a chance to investigate, Lampkin failed to exhaust her administrative remedies prior to bringing this claim in federal court, assuming she ever intended to bring this claim in the first place.[4] *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) ("Before a potential plaintiff may sue for discrimination under Title VII, she

---

[4] Indeed, this action was commenced in the same month she alleges she was denied a promotion to package car driver in June 2006, yet neither the initial complaint nor the amended complaint filed on March 16, 2007, mention this alleged failure to promote. Furthermore, the plaintiff also fails to mention this alleged failure to promote in her response to the defendant's summary judgment motion despite the defendant's brief, which explicitly discusses it, and despite raising the April 2004 package car driver position in her own brief. (*See, e.g.*, Pl.'s Resp. Br. 10.)

must first exhaust her administrative remedies . . . [and t]he first step down this path is filing a timely charge of discrimination with the EEOC."). Therefore, her first and second causes of action under Title VII fail and the defendant's summary judgment motion is due to be granted as to these claims.[5]

### B.    *Equal Pay Act Claim*

Lampkin's third and final cause of action alleges a violation of the Equal Pay Act. (Am. Compl. ¶¶ 31-34.) Specifically, she claims she received lower pay raises than Brown, her white, male counterpart. (*Id.* ¶ 14.) Although her response brief to the summary judgment motion fails to provide a legal argument for her equal pay claim, it does re-allege the claim and cites to her deposition testimony. (Pl.'s Resp. Br. 3-4.) In her deposition, Lampkin claims Brown held the same position as she, yet he received higher pay raises in 2004 and 2005. (Lampkin Dep. 221:2-11.)

In order to establish a *prima facie* claim under the Equal Pay Act, a plaintiff must show "that the employer paid employees of opposite genders different wages for equal work for jobs which require 'equal skill, effort, and responsibility, and which

---

[5] Lampkin's argument that internal complaints satisfy the timely filing of an EEOC charge of discrimination as required by statute is incorrect. (*See* Pl.'s Resp. Br. 7-8.) While internal complaints may be protected expressions for the purposes of a retaliation claim, *Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000), as noted by Lampkin, (Pl.'s Resp. Br. 8), they do not relieve an employee of the requirement to file a formal charge with the EEOC, nor do they toll the statute of limitations. *Jordan v. City of Montgomery*, No. 06-534, 2007 WL 2903010, at *4 (M.D. Ala. Oct. 3, 2007) ("[T]he employee's pursuit of an internal grievance process . . . [with respect to] an employment decision that has been made and communicated to her does not toll the running of the limitations period.").

are performed under similar working conditions.'" *Steger v. Gen. Elec. Co.*, 318 F.3d 1066, 1077-78 (11th Cir. 2003) (quoting *Irby v. Bittick*, 44 F.3d 949, 954 (11th Cir. 1995)). Even if a *prima facie* claim is established, an "employer may avoid liability by proving by a preponderance of the evidence that the pay differences are based on '(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) . . . any other factor other than sex.'" *Id.* at 1078 (quoting 29 U.S.C. § 206(d)(1)).

Lampkins fails to establish a *prima facie* claim because she at all relevant times earned more per month than her male comparator. Although there was a difference in their wages, it was in Lampkin's favor. Furthermore, her employer has provided a lawful reason for Brown receiving larger annual raises in particular years because Lampkin was at the top of her pay grade, thereby leaving little room for salary increases, while Brown was not. (Poulter Decl. ¶ 15.) Lampkin utterly fails to rebut, or even respond to, UPS's legitimate reason for any differences between her raises and Brown's raises. Therefore, UPS's motion for summary judgment is due to be granted as to Lampkin's Equal Pay Act claim.

## V. CONCLUSION

For the reasons set forth above, it is hereby ORDERED that the defendant's Motion for Summary Judgment (Doc. # 62) is GRANTED as to each and every claim brought by the plaintiff.

An appropriate judgment will be entered.

DONE this 1st day of May, 2008.

                                        /s/  W. Keith Watkins
                                        UNITED STATES DISTRICT JUDGE